## FLORIDA *v.* MELLON, SECRETARY OF THE TREASURY, ET AL.

No. —; Original. Rule to show cause argued November 23, 1926.— Rule discharged January 3, 1927.

1. To come within the original jurisdiction of this Court, a suit by a State must be for redress of a wrong, or enforcement of a right, susceptible of judicial redress or enforcement. P. 16.

2. The federal inheritance tax law is constitutional, and must prevail over any conflicting provisions of state laws or constitutions. P. 17.

3. The constitutional requirement of uniformity in excise taxation (Art. I, § 8, cl. 1) is satisfied when by the provisions of a tax law the rule of liability under it is the same in all parts of the United States. P. 17.

4. The fact that the provisions of the federal act allowing deduction of State inheritance taxes in computing the federal tax can not be availed of in Florida, since that State by her constitution is forbidden to tax inheritance, does not sustain an allegation that the federal tax will directly injure her revenue by inducing the withdrawal of property from the State. P. 17.

5. A State can not, as *parens patriae,* represent her citizens in a suit to protect them from unconstitutional inequalities alleged to result from a federal tax law. P. 18.

Leave to file bill denied.

UPON a rule to show cause why the petition of the State of Florida to file a bill of complaint in this Court should not be granted. The proposed bill sought to enjoin the Secretary of the Treasury and the Commissioner of Internal Revenue from attempting to collect federal inheritance taxes in Florida.

*Messrs. John B. Johnson,* Attorney General of Florida, and *Peter O. Knight,* with whom *Mr. James F. Glen* was on the brief, for the complainant.

The Constitution never contemplated that Congress could pass an excise tax law which would depend upon affirmative action by the several States to make it uniform in force and effect. It requires that an excise tax law, within itself, shall be uniform throughout the United States.

The Estate Tax provision of the Revenue Act of 1926 was passed to coerce States into adopting estate or inheritance tax laws. If Congress could rebate 80 per centum, it could just as legally rebate 100 per centum of the tax, and the State not imposing a tax of this kind would be the only State paying such a tax to the Federal Government.

Each State is supposed to raise revenue from the sources and in the manner most advantageous to itself, its citizens and to its business. These necessary taxes are bound to come from the earnings of its citizens in some form or other. One State may deem it to its advantage to raise a large part of this revenue from death duties, thus relieving other classes of its property and business from the burden. Another may deem it to its advantage to raise its revenues from other sources than death duties. Yet each State imposes its burden on the earning power of its citizens. Florida raises her revenue from other sources than death duties and income taxes. A majority of the States have combined and intend to force Florida to pay death duties, or estate taxes, for the support of the United States Government, when these same death duties or estate taxes paid by other States go to pay the expenses of state governments. The Constitution never contemplated such a condition. The Federal Government has no power by taxation or otherwise to control the internal affairs of the State in any matter not in conflict with the powers delegated to the United States, or inhibited to the State, by the Constitution. *Texas* v. *White,* 7 Wall.

700. The Estate Tax provision was not passed for the purpose of raising federal revenue. It was directed primarily at the State of Florida. It was not passed to obtain revenue from the tax-paying estates in Florida, but to nullify a constitutional provision of the State. *Pollock* v. *Farmers Loan & Trust Co.,* 157 U. S. 429.

Section 3224 Rev. Stat., is intended to be applicable only to individual controversies relating to specific taxes, and not to taxes sought to be imposed upon a large class under color of an unconstitutional statute. It approaches *reductio ad absurdum* to suggest that there must be universal submission throughout the United States to an unconstitutional statute, followed by tens of thousands of claims or suits for the recovery of taxes paid under it. *Hill* v. *Wallace,* 259 U. S. 44; *Graham* v. *Dupont,* 262 U. S. 234.

In the present case we have an Act of Congress operative in Florida, against the will of the State and its citizens, to which obedience must be yielded, if it is constitutional. That Act directly seeks and requires the removal from the State of property to the extent of several millions of dollars per annum. Its removal will diminish the revenues of the State. The Act directly discriminates in its effect against the State of Florida, as compared with other States. Those considerations, and others, particularly the fact that it cannot be denied that the representatives of Florida decedents questioning the constitutionality of the Act will have a justiciable controversy, distinguish this case from *Massachusetts* v. *Mellon,* 262 U. S. 447, and bring it within the category of *Missouri* v. *Holland,* 252 U. S. 416.

*Solicitor General Mitchell,* with whom *Mr. Robert P. Reeder,* Special Assistant to the Attorney General, was on the brief, for the defendant.

*Messrs. Edward A. Harriman* and *Thomas B. Adams* filed briefs as *amici curiae* by special leave of Court.

Mr. JUSTICE SUTHERLAND delivered the opinion of the Court.

The State of Florida seeks leave to file a bill of complaint against the defendants, citizens of other states, to enjoin them from attempting to collect in Florida inheritance taxes imposed by § 301 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 69–70. A rule upon the defendants to show cause why such leave should not be granted was issued and answered.

The complaint alleges that under the constitution of Florida no tax on inheritances can be levied by the state or under its authority; that by § 301 of the act referred to certain graduated taxes are imposed on the estates of decedents subject to the following provision:

" The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304."

It is further alleged that the defendants are officers of the United States and are seeking to enforce the provisions of § 301; that citizens of Florida have died since the act was passed, leaving estates subject to taxation under the terms of that section; that defendants have required and are requiring the legal representatives of such decedents to make returns under that section, and unless such action is restrained, it will result in the withdrawal from Florida of several million dollars per annum and thus diminish the revenues of the state derived

largely from taxation of property therein; that the state is directly interested in the matter because it raises by taxation a sufficient amount of revenue to pay the expenses of the state government otherwise than by imposing inheritance taxes or taxes on incomes; and that the provisions of the said section constitute an invasion of the sovereign rights of the state and a direct effort on the part of Congress to coerce the state into imposing an inheritance tax and to penalize it and its property and citizens for the failure to do so. It is further alleged that the state is directly interested in preventing the unlawful discrimination against its citizens which is effected by § 301 and in protecting them against the risk of prosecution for failure to comply with the enforcement provisions of the act; that the several states, except Florida, Alabama, and Nevada, levy inheritance taxes, but by reason of the provisions of its constitution Florida cannot place its citizens on an equality with those of the other states in respect of the tax in question, and [therefore] the tax is not uniform throughout the United States as required by § 8 of Article I of the federal Constitution.

The allegations of the bill suggest two possible grounds upon which the asserted right of complainant to invoke the jurisdiction of this court may be supported: (a) that the state is directly injured because the imposition of the federal tax, in the absence of a state tax which may be credited, will cause the withdrawal of property from the state with the consequent loss to the state of subjects of taxation; and (b) that the citizens of the state are injured in such a way that the state may sue in their behalf as *parens patriae.* Neither ground is tenable.

While judicial relief sometimes may be granted to a *quasi-*sovereign state under circumstances which would not justify relief if the suit were between private parties, *Georgia* v. *Tennessee Copper Co.,* 206 U. S. 230, 237, nevertheless, it must appear that the state has suffered

a wrong furnishing ground for judicial redress or is asserting a right susceptible of judicial enforcement. The mere fact that a state is the plaintiff is not enough. *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, 287; *Oklahoma* v. *A., T. & Santa Fe Ry.,* 220 U. S. 277, 286, 289.

The act assailed was passed by Congress in pursuance of its power to lay and collect taxes, and, following the decision of this court in respect of the preceding act of 1916, *New York Trust Co.* v. *Eisner,* 256 U. S. 345, must be held to be constitutional. If the act interferes with the exercise by the state of its full powers of taxation or has the effect of removing property from its reach which otherwise would be within it, that is a contingency which affords no ground for judicial relief. The act is a law of the United States made in pursuance of the Constitution and, therefore, the supreme law of the land, the constitution or laws of the states to the contrary notwithstanding. Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield. *Ex parte Virginia,* 100 U. S. 339, 346; *Brown* v. *Walker,* 161 U. S. 591, 606; *Cummings* v. *Chicago,* 188 U. S. 410, 428; *Lane County* v. *Oregon,* 7 Wall. 71, 77.

The contention that the federal tax is not uniform because other states impose inheritance taxes while Florida does not, is without merit. Congress cannot accommodate its legislation to the conflicting or dissimilar laws of the several states nor control the diverse conditions to be found in the various states which necessarily work unlike results from the enforcement of the same tax. All that the Constitution (Art. I, § 8, cl. 1) requires is that the law shall be uniform in the sense that by its provisions the rule of liability shall be the same in all parts of the United States.

The claim of immediate injury to the state rests upon the allegation that the act will have the result of inducing potential tax-payers to withdraw property from the state,

thereby diminishing the subjects upon which the state power of taxation may operate. The averment to that effect, however, affords no basis for relief, because, not only is the state's right of taxation subordinate to that of the general government, but the anticipated result is purely speculative, and, at most, only remote and indirect. *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48, 68–70. If, as alleged, the supposed withdrawal of property will diminish the revenues of the state, *non constat* that the deficiency cannot readily be made up by an increased rate of taxation. Plainly, there is no substance in the contention that the state has sustained, or is immediately in danger of sustaining, any *direct* injury as the result of the enforcement of the act in question. See *In re Ayers,* 123 U. S. 443, 496; *Massachusetts* v. *Mellon,* 262 U. S. 447,488.

Nor can the suit be maintained by the state because of any injury to its citizens. They are also citizens of the United States and subject to its laws. In respect of their relations with the federal government " it is the United States, and not the State, which represents them as *parens patriae,* when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status." *Massachusetts* v. *Mellon, supra,* pp. 485–486.

It follows that leave to file the bill of complaint must be denied.

*Rule discharged and leave denied.*