In re ANN ARBOR BREWING CO.

No. 32470.

United States District Court, E. D. Michigan, S. D.

Oct. 24, 1951.

Joel G. Jacob, Detroit, Mich., for trustee.

William M. Laird, City Atty., and Louis C. Andrews, Jr., Asst. City Atty., Ann Arbor, Mich., for City of Ann Arbor and Washtenaw County.

Alfred Stolinski, Asst. Corp. Counsel, Detroit, Mich., for City of Detroit.

James J. Rossie, Asst. Atty. Gen., for State of Michigan.

Joseph Maisano, Detroit, for United States Collector of Internal Revenue.

McKENZIE, Referee.

This matter is before the Court on an Order to Show Cause directed to the several taxing authorities, mentioned in detail hereinafter, to prove the amount, validity and respective priority of their alleged liens and claims.

Several hearings were had and extensive briefs were filed by the City of Ann Arbor, the Collector of Internal Revenue and the Trustee. The Court has carefully considered the proofs submitted, the oral arguments of counsel and the several briefs as filed.

The Receiver in this case received an offer of $25,500 for the real and personal property in this estate free and clear of liens. After due notice to all lien holders and also to all creditors of the above bankrupt, and after hearings had thereon, the above offer was accepted with the consent of the various lien holders and all valid liens were transferred to the proceeds of the sale. Action was taken on said matters at the time of the first meeting of creditors in the above estate on March 23, 1950, and the reclamation petition of the holder of first and second mortgages on both the real estate and personal property was decided at that time without objection by any of the taxing authorities. A formal order granting said reclamation petition was entered on March 30, 1950. There was no appeal from this order. On July 28, 1950 the petition for an order to show cause re the marshaling of liens was filed and the order to show cause referred to at the beginning of this opinion and order was entered.

Since apparently most of the troublesome questions regarding tax liens and their relative priorities have been raised in this case, the Court has given these matters careful consideration even though the final results may not leave much money in dispute.

The relative priority of state and federal tax liens is the most important question in dispute. Can the state or its subsidiary taxing authorities, to wit: cities, school districts and counties, by apt wording in their statutes or ordinances affect the taxing authority of the federal government? Are their alleged tax liens superior to those of the federal government because of claims to priority included in their laws?

A basic consideration of fundamentals is necessary.

1. Article VI of the Constitution of the United States provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Article I, Section 8, provides in part:

"The Congress shall have Power To lay and collect Taxes, Duties, Imposts. and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises. shall be uniform throughout the United States;

\* \* \* \* \* \*

"To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

\* \* \* \* \* \*

"To make all Laws which shall be necessary and proper for carrying into. Execution the foregoing Powers, and all other Powers vested by this Constitutition in the Government of the United States, or in any Department or Officer thereof."

The laws enacted by congress are the supreme law of the land. McCulloch v. Maryland, 1819, 4 Wheat. 316, 4 L.Ed. 579; State of Florida v. Mellon, Secretary of the Treasury, etc., 1927, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511.

Since under Article I, Section 8 of the United States Constitution, the United States has exclusive jurisdiction in bankruptcy matters, the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., are the

supreme law of the land. This act provides for the payment of the debts of the bankrupt and gives priority to certain of these debts. This same priority must apply uniformly throughout the entire United States.

Section 64 sub. a(4) of the Bankruptcy Act provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: Provided, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court: And provided further, That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court".

Section 67, sub. b provides:

"The provisions of section 60 of this Act to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, and statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII, or XIII of this Act, by or against him. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be per-fected by filing notice thereof with the court."

Section 67, sub. c provides:

"Where not enforced by sale before the filing of a petition in bankruptcy or of an original petition under chapter X, XI, XII, or XIII, of this Act, though valid under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or subdivision thereof, on personal property not accompanied by possession of such property, and liens whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act, and, except as against other liens, such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision a of section 64 of this Act."

Section 64, sub. a(4) deals only with taxes that are merely debts. Section 67, sub. c deals with taxes that have become liens on personal property only. Congress must have intended the two groups of taxes to be treated differently or it would not have provided for them as it has.

Since the tax liens on the personal property are made subordinate to administration expenses and labor claims by Section 67, sub. c, unless the property is in the possession of one of the taxing authorities, and there will not be money enough to pay all tax liens in full, it becomes important to determine whether there is to be any variance of priority among the tax liens and which law is to apply.

There can be no question but that the Bankruptcy Act, not state law, will control the method of payment. United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294. There can be also no question but that the federal government can create just as valid a tax lien as any state or subdivision thereof. The questions remaining to be

answered, however, are these: (1) Are all these statutory liens of equal rank?; and (2) Are those of equal rank to be grouped together, or are they to be paid in the order of time in which their liens attached or became perfected?

■ Liens of equal dignity or rank should be paid in the order of time the liens attached. "First in time, first in right". Rankin v. Scott, 12 Wheat. 177–179, 6 L.Ed. 592; United States v. City of Greenville, 4 Cir., 118 F.2d 963; In re Taylorcraft Aviation Corp., 6 Cir., 168 F.2d 808.

The case of In re Ever Krisp Food Products Co., 307 Mich. 182, 11 N.W.2d 852, merely holds city and county personal property taxes were complete and perfected liens and would be paid before U.S. taxes merely claiming priority under R.S. Section 3466, 31 U.S.C.A. § 191. The United States made no claim to a lien in this case.

The city of Ann Arbor, and as agent for the school district and the county of Washtenaw, had possession of the property, both real and personal, at the time these bankruptcy proceedings were filed. Apparently, therefore, if no other valid considerations intervene, their tax claims should be paid before general administration expenses and labor claims are paid, under the provisions of Section 67, sub. c of the Bankruptcy Act heretofore quoted. They are, however, subject to their prorata share of the cost of protecting and preserving the property and the cost of sale.

Since only the personal property taxes are subordinate to administration expenses and labor claims and the real estate taxes are not, but both are subject to their prorata share of the cost of protecting, preserving and selling the property, the court makes the following findings and determination of costs. The cost of the appraisal was $189 and $85 of this sum will be charged to the real estate and $104 to the personal property, based on the appraised value of each. The receiver's fee will be allowed at $200 for these purposes and divided $85 to the real estate and $115 to the personal property. There was a private offer submitted to creditors and approved by the court so there are no auctioneer's fees to be paid. Therefore, the costs of protecting, preserving and selling the property will be $170 to be charged against the real estate and $219 to be charged against the personal property.

The federal government's claims to liens for its taxes are based on the provisions of Sections 3670, 3671 and 3672 of Title 26 U.S.C.A. The applicable portions of these sections are as follows:

"§ 3670. Property subject to lien.— If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448."

"§ 3671. Period of lien.—Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. 53 Stat. 449."

"§ 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors.—(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice".

■ The court finds that liens of the federal government arising under Section 3670 and 3671 of Title 26 U.S.C.A. are just as valid as and of equal dignity with liens arising under Section 40 of Act 206, P.A.

of Michigan of 1893, as amended, 7.81 M.S.A., Comp.Laws 1948 Mich. § 211.40, or under Section 171 of the Ann Arbor City charter. The court further finds that the trustee in bankruptcy was not a judgment creditor within the purview of Section 3672, supra, In re Taylorcraft Aviation Corp., 6 Cir., 168 F.2d 808–810; and that the state taxing authorities were not mortgagees, pledgees, purchasers or judgment creditors within the purview of said Section 3672.

Therefore, the cases cited by the City of Ann Arbor concerning the validity of the Michigan Statute, Act 104 of 1923, M.S.A. 7.751, Comp.Laws 1948 Mich. § 211.521, requiring the real estate to be described in a federal tax lien before it is valid, do not apply to the present case. In each of those cases a purchaser, mortgagee or judgment creditor was involved. Those cases were: United States v. Maniaci, D.C., 36 F.Supp. 293, affirmed, 6 Cir., 116 F.2d 935; United States v. City of Detroit, 6 Cir., 138 F.2d 418, on rehearing, 6 Cir., 141 F.2d 1021; Youngblood v. United States, 6 Cir., 141 F.2d 912, 914. The court has found no cases which hold such recording is a prerequisite to the validity of a federal tax lien as between the federal government and other taxing agencies.

There are, however, still several serious questions to be answered. The city of Ann Arbor, the county of Washtenaw and the school district had specific liens on the land in question and the personal property while the federal goverment had only a general lien on all the property of the bankrupt until it filed its specific lien against the real estate with the register of deeds for Washtenaw county on December 2, 1949. As stated before, however, this filing was not necessary to make the general liens good against the real estate as between the various taxing agencies. United States v. City of Greenville, 4 Cir., 118 F.2d 963; Paul v. United States, 6 Cir., 127 F.2d 64, affirmed in State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312.

■ Where the federal government has a lien on both real estate and personal property, it cannot exhaust the value of the real estate before proceeding to the personal property to the complete exclusion of the specific liens of the city, county and school district on this realty. The specific liens of the city, county and school district on the real estate amount to $689.19 so the court will allow these specific liens to be paid in full.

■ The mere fact that the liens of the city, county and school district were on specific property was not the controlling factor in this decision. The court applied the general equity rule that where one has liens on more than one piece, group or type of property, some of which are subject to junior liens, he cannot exhaust this property covered with junior liens until he has exhausted his rights against the other property not so covered. The court realizes that the usual term is "satisfied his lien"; and that would have been very close to the result in this case, if not actually accomplished, had it not been for the intervention of the provisions of Section 67, sub. c subordinating the government's lien on personal property to the payment of administration expenses and labor claims. After much thought and consideration of this problem and the assembling of many sets of figures, the above decision seemed the only practical and feasible one.

The amount of money in the hands of the trustee allocated to the real estate is $2,925.40. Against this has been charged, supra, $170 as the cost of its protection and preservation. This will leave $2,755.40 to be divided among the tax lien claimants. After paying the city, county and school district on their specific liens the sum of $689.19 there will be $2,066.21 left. Since the government's valid liens effective prior to August 31, 1949, when the Corporation and Securities Commission's general lien on all property became effective, exceed this sum, this balance of $2,066.21 will be paid to the government. A detailed statement of the amounts and effective dates of the various government liens will be set out hereafter.

■ We now come to the liens on the personal property. As heretofore dis-

cussed, the city, county and school district had valid possession of this personal property and had advertised it for sale prior to the filing of the petition in bankruptcy. Therefore, their personal property tax claims are not to be subordinated to administration expenses and labor claims, Section 67, sub. c of Bankruptcy Act, and they did not lose this security by permitting the trustee to sell the property, Goggin v. Division of Labor, Law Enforcement, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543.

Since they are the only taxing agencies which had possession of the property, their personal property tax lien in the sum of $689.19 will be paid in full. The amount of money allocated to the personal property was $3,579.31, and against this was charged $219 for its protection and preservation. Deducting these two sums from $3,579.31 we have $2,671.12 which sum is subject to deductions for administration expenses and labor claims, and the balance will be divided among the other taxing agencies in the order of time their respective liens became effective. Each lien will be paid in full in the order of its priority before the next junior lien is paid.

The various liens will be paid in the amount and in the order stated below after crediting against the government's claims first the sum of $2,066.21 derived from the sale of real estate.

Payment must be delayed, however, until the administration expenses have been determined and allowed, and the amount of priority labor claims determined. After the administration expenses and priority labor claims have been paid in full the balance of the funds on hand will be paid to the tax lien claimants as herein indicated.

I. City of Detroit personal property tax for $62.63, which became a lien July 15, 1944.

II. Federal taxes due to the United States, to wit:

1. 3rd quarter 1948 employment tax in the amount of $198.16, which became a lien on December 27, 1948.

2. 3rd quarter 1948 withholding tax in the amount of $1,457.02, which became a lien on December 27, 1948.

3. 4th quarter 1948 withholding tax in the amount of $564.65, which became a lien on March 17, 1949.

4. 4th quarter 1948 employment tax in the amount of $195.87, which became a lien on March 31, 1949.

5. 1st quarter 1949 employment tax in the amount of $164.93, which became a lien on May 18, 1949.

6. 1st quarter 1949 withholding tax in the amount of $580.51, which became a lien on May 23, 1949.

III. 7a. Federal taxes due to the United States for 2nd quarter 1949 employment tax in the amount of $106.77, which became a lien on August 31, 1949.

7b. Michigan Corporation and Securities Commission, corporation tax in the amount of $195.75, which became a lien on August 31, 1949.

The tax liens listed in 7a and 7b are of equal rank and are to be pro-rated if there is not enough money to pay both taxes in full.

IV. 8. Federal taxes due to the United States for 3rd quarter 1949 employment tax in the amount of $127.82, which became a lien on December 5, 1949.

V. 9a. Michigan Unemployment Compensation Commission claim for 3rd quarter 1949 contributions tax in the amount of $101.20, which became a lien on December 12, 1949.

9b. Federal tax due to the United States for 3rd quarter 1949 withholding tax in the amount of $493.04, which became a lien on December 12, 1949.

The tax liens listed in 9a and 9b are of equal rank and are to be pro-rated if there is not enough money to pay both taxes in full.

VI. 10. Michigan Unemployment Compensation Commission claim for 4th quarter 1949 contributions tax in the amount of $25.02, which became a lien on February 8, 1950.

Federal taxes due to the United States to wit:

11. Supplemental withholding tax for the 4th quarter 1948 in the amount of

118

$28.33, which became a lien on February 27, 1950.

12. 4th quarter 1949 employment tax in the amount of $129.31, which became a lien on March 6, 1950.

13. 4th quarter 1949 withholding tax in the amount of $208.50, which became a lien on March 8, 1950.

14. Additional 1944 income tax in the amount of $23,846.58, which became a lien on May 15, 1950.

15. Assessed interest on 1945 income tax in the amount of $116.80, which became a lien on May 15, 1950.

In view of the foregoing findings—

It Is Hereby Ordered that the various tax liens be paid in the order, amounts and manner heretofore provided, and that the other provisions contained in the foregoing Opinion and Order be given full force and effect.