**STATE OF MINNESOTA ex rel. Miles LORD, Attorney General, Appellant,**

v.

**Ezra T. BENSON, Secretary of Agriculture, Appellee.**

**No. 15246.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 18, 1959.

Decided Jan. 21, 1960.

---

------♦------

Mr. Sydney Berde, St. Paul, Minn., of the bar of the Supreme Court of Minnesota, pro hac vice, by special leave of court, with whom Mr. Max M. Kampelman, Washington, D. C., was on the brief, for appellant. Messrs. Eugene Gressman and Daniel M. Singer, Washington, D. C., also entered appearances for appellant.

Mr. Seymour Farber, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Samuel D. Slade, Atty., Dept. of Justice, were on the brief, for appellee.

Mr. William E. Torkelson, Madison, Wis., filed a brief on behalf of the State of Wisconsin, as amicus curiae, urging reversal.

Before EDGERTON, WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In the District Court the State of Minnesota, on relation of her Attorney General, sued the Secretary of Agriculture of the United States for a declaratory judgment that a milk marketing order of the Secretary, issued November 26, 1958, regulating the marketing of milk in the Mississippi Gulf Coast Marketing Area, was unlawful. The order is found in 7 C.F.R. § 1014.1-.101 (Supp. 1959) and was made by the Secretary under the authority of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 601 et seq., 7 U.S.C.A. § 601 et seq. The essence of the State's attack upon the order is that it prohibits or limits the marketing in the regulated marketing area of milk or milk products produced in other production areas, including Minnesota, contrary to 50 Stat. 246 (1937), 7 U.S.C. § 608c (5) (G), 7 U.S.C.A. § 608c (5) (G). This provision reads as set forth in the margin.[1]

Minnesota claimed standing to maintain the action as a party aggrieved or adversely affected, and seeks to support this claim by contending that she is entitled to sue as *parens patriae* on behalf of her citizens and as representative of her dairy industry, said to be adversely affected by the order, which we assume *arguendo* to be true. Minnesota ranks second among the states in total milk production and a large part of this milk seeks its market beyond Minnesota. The result is said to be that economic barriers to the free interstate flow of this milk into the regulated marketing

---

1. "No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of

any milk or product thereof produced in any production area in the United States."
50 Stat. 246 (1937), 7 U.S.C. § 608c(5) (G), 7 U.S.C.A. § 608c(5) (G).

area, barriers attributed to the order challenged, adversely affect the economy of the State.[2] Minnesota asserts no proprietary interest which is adversely affected, or any impact of the order upon her apart from her position as *parens patriae*. The District Court granted the Secretary's motion to dismiss the complaint on the ground that Minnesota lacked standing to sue as *parens patriae*.

Under the decisions of the Supreme Court in Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and State of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511, and notwithstanding the reliance by Minnesota for a contrary view upon State of New York v. United States, D.C., 65 F.Supp. 856, 872, affirmed 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492, we are of the view that the United States rather than Minnesota occupies the relationship of *parens patriae* to those who are said here to be adversely affected or aggrieved by this order issued by the Secretary in his capacity as an official of the United States acting under the authority of federal legislation. See also Jones ex rel. State of Louisiana v. Bowles, 322 U.S. 707, 64 S.Ct. 1043, 88 L.Ed. 1551. While the actions of the States in Massachusetts and Florida challenged, respectively, the constitutionality of federal statutes and not their administration,[3] we think the principles of the decisions apply to the present case; for in his order here challenged the Secretary purports to effectuate through the Agricultural Marketing Agreement Act of 1937 an exercise by Congress of its plenary constitutional power to regulate interstate commerce. United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726. The case is quite different from State of Georgia

v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051. And in State of New York v. United States, supra, while the action challenged the validity of rate orders of the Interstate Commerce Commission, which also must ultimately rest upon the Commerce Clause, U.S.Const. art. 1, § 8, cl. 3, those orders appear to have regulated the area of the State of New York as a locality subject as such to the orders, and they applied to the State as a shipper as well.

Affirmed.

---

2. The Attorney General is charged by State statute with the responsibility and duty of seeking judicial relief from unlawful regulatory action which burdens interstate trade. Minn.Stat.Ann. § 8.13 (Supp.1958).

3. An examination of the complaint in Bowles, however, shows not only that it attacked the Price Control Act as violative of the Due Process Clause of the Fifth Amendment, but also that it attacked certain orders of the Administrator, Bowles, as violative of the Act itself. See file of the case in the office of the Clerk of the Supreme Court.