William J. BAXLEY, Attorney General of the State of Alabama, and State of Alabama, ex rel. William J. Baxley, Attorney General, Plaintiffs,

v.

Jack RUTLAND, individually and as Superintendent of Enterprise City Schools, et al., Defendants.

Civ. A. No. 75–90–S.

United States District Court, M. D. Alabama, S. D.

March 10, 1976.

On Motion for New Trial March 30, 1976.

# 1250

William J. Baxley, Atty. Gen., and Frederick S. Middleton, III, Asst. Atty. Gen., State of Ala., Montgomery, Ala., for plaintiffs.

Kenneth T. Fuller, Cassady & Fuller, Enterprise, Ala., for defendants the Superintendent of Enterprise City Schools and the members of the Enterprise City Bd. of Ed.

Charles M. Crook, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for defendants the Superintendent and members of the Alabama State Bd. of Ed.

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

## OPINION

RIVES, Circuit Judge:

This case is submitted for decision on the motion to dismiss as amended.[1] The complaint seeks declaratory and injunctive relief from the payment of fees authorized to be determined by the defendants pursuant to sections 142 and 437 of Tit. 52 of the Code of Alabama as recompiled in 1958.[2]

The complaint charges that Title 52 section 437, on its face and as applied, violates the Fourteenth Amendment. It charges also that a long list of policies and practices of the defendants directed against both indigent and non-indigent students on whose behalf fees were not paid violate the rights of the students and of their parents or guardians to due process and equal protection under the Fourteenth Amendment.

## I. Past Rulings and Decisions

The Supreme Court of Alabama has on two occasions ruled on the legality of charging matriculation fees or incidental fees, but in neither case was there any contention as to a violation of the United States Constitution.

In *Vincent v. County Board of Education of Talladega County*, 1931, 222 Ala. 216, 131 So. 893, the court held that regulations of school trustees requiring payment of a $4.00 incidental fee and a $4.00 matriculation fee per semester do not violate section 256 of the Alabama Constitution requiring the establishment of "a liberal system of public schools." Justice Sayre, writing for the court, said in part:

" 'Free' and 'liberal' are by no means synonymous. They are both terms of varied meaning and application. The better part of three columns of Webster's New International Dictionary are devoted to definitions of the word 'free'; but, as applied to schools, that authority defines a free school as a school where no charge is made for tuition. 'Liberal' is also a word of varied meaning. As applied to the public school system we do not doubt that it intends a system as generous and bountiful as a just consideration of the limited power of taxation and the varied needs of the state will in reason justify. Necessarily something must be left to the enlightened discretion of the Legislature which, within constitutional limits, levies taxes and apportions them to the various needs of the state. No doubt a liberal system of public education will be so

1. The motion was filed by "Enterprise defendants," who consist of the Superintendent of the City Schools and the members of the City Board of Education, both individually and in their official capacities.

2. "§ 142. *Incidental fees in elementary schools.*—No fees of any kind shall be collected from children attending any of the first six grades during the school term supported by public taxation." Code of Ala., Tit. 52, § 142.

"437. *Matriculation fee may be charged.*—A matriculation fee may be collected for each semester from all pupils in accredited high

schools, the amount of such fee to be determined by the county board of education or the city board of education as the case may be, and the proceeds of such fees shall be expended under the direction of the county board of education or the city board of education as the case may be. A reasonable fee for library, laboratory and shop work may be required, the amount of such fee to be determined by the county board of education or the city board of education as the case may be." Code of Ala., Tit. 52, § 437.

framed as to give every child between the ages of seven and twenty-one years a chance, but, when details of school management are considered, something must be left to legislative discretion."

131 So. 894.

In *Shirey v. City Board of Education of Fort Payne*, 1957, 266 Ala. 185, 94 So.2d 758, the court dealt with a state statutory requirement of a "free public school." Justice Merrill, writing for the court, stated its holding as follows:

"The appellants contended that the DeKalb County High School is not a 'free public school' within the meaning of § 158 [Tit. 52, Code of Ala. 1940], supra, because a matriculation or incidental fee of $4 per year is paid by Junior High School students and $6 per year by Senior High School students. These fees were charged pursuant to Tit. 52, § 437, which allows a board of education to collect matriculation and incidental fees from high school students, which fees were held not to be tuition and not to be in conflict with a statutory requirement that the public school system be free to minors over seven years of age. *Bryant v. Whisenant*, 167 Ala. 325, 52 So. 525; *Roberson v. Oliver*, 189 Ala. 82, 66 So. 645; *Kennedy v. County Board of Education*, 214 Ala. 349, 107 So. 907. It is our considered opinion that the Legislature did not intend, by enacting § 437, to permit the various boards of education to take their schools out of the definition of 'free public schools' by the charge of a small matriculation or incidental fee. This is all the more certain because the cited section permitting matriculation and incidental fees in high schools was adopted after the decisions in the cases cited, supra, and contemporaneously with a section expressly stating that the schools shall be free to all children over six years of age. Tit. 52, § 93, Code 1940, repealed Act 201, Acts of Alabama 1955, page 492. We, therefore, hold that the DeKalb County High School is a 'free public school' within the meaning of Tit. 52, § 158."

94 So.2d 761.

The brief filed by the "Enterprise defendants" states without challenge that a predecessor in office to the present Attorney General of Alabama "has rendered two opinions that the fees collected under sections 142 and 437 are legal and constitutional fees." [3]

Much closer, however, to the business of this Court is the case of *Wilder, et al. v. McCool, et al.*, C.A. No. 71–799 of the United States District Court for the Northern District of Alabama. That case presented as to three separate school systems (Pickens County, Birmingham City, and Tuscaloosa City) one of the same questions of law presented in the present case; that is, whether section 437, Title 52 of the Code of Alabama, on its face and as applied, violates the Fourteenth Amendment.

District Judge Sam C. Pointer, Jr., on February 4, 1974, entered a pretrial order severing the cases; [4] retaining jurisdiction of the Pickens County and Tuscaloosa City systems in the Western Division of the District at Tuscaloosa; transferring "the venue of further proceedings regarding the Birmingham City System to the Southern Division of this court"; docketing the Birmingham City System case "for trial at 9:00 A.M., February 23, 1972"; and stating that "The two cases which remain in the Western Division will be docketed for separate trials during the May term of this division of the court." In fact, however, there have been no further proceedings in the two cases which remained in the Western Division.

---

3. In support are cited Reports of the Attorney General of Alabama, Vol. 134, p. 27, and Vol. 102, p. 16. The annotations to Alabama Code, Tit. 52, § 437, cite also Reports of the Attorney General 1936–38 pp. 115 and 172.

4. Paragraph 4 of the same pretrial order recites: "William J. Baxley originally sued as a defendant has by prior order of this Court been allowed to continue in the litigation as a party or representative party plaintiff."

The Birmingham City System case transferred to the Southern Division proceeded to trial as docketed, and on February 24, 1972 the following order was entered:

"ORDER

"This cause came on for trial on the plaintiff's prayer for injunctive relief. As stated in the pre-trial order, this is a separate action, respecting the above-named defendants in the Birmingham City School System. Findings of fact and conclusions of law, based on the evidence and documents presented, having been dictated into the record, it is

"ORDERED and ADJUDGED that the defendants have not violated the 14th Amendment and plaintiff's prayer for injunctive relief is hereby denied.

"It is further ORDERED and ADJUDGED that this order be final and each party shall bear his own costs.

"This the *24th* day of February, 1972.

"/s/ Sam C. Pointer, Jr.
UNITED STATES DISTRICT JUDGE"

No appeal was taken from that judgment, and, of course, it has long since become final.

We have outlined the past rulings which may have some relevance to a decision on the constitutionality of section 437, Tit. 52, Code of Alabama in order to reach a clearer understanding of this case and of the jurisdictional issues presently to be discussed.

## II. *Mootness*

The "Enterprise defendants" amended their motion to dismiss by adding grounds 15 to 21, inclusive, which claimed that the Education Appropriations Bill passed by the Legislature of Alabama on November 18, 1975 had impliedly repealed sections 142 and 437 of the Code of Alabama and thus had rendered this case moot. The Bill became Act No. 129, bearing the title: "To make annual appropriations for the support, maintenance and development of public education in Alabama for the fiscal year ending September 30, 1976."

The Act provides in section 3(d):

"It is the intent of the legislature that no fees shall be collected in the future in courses required for graduation. In non-required courses local school boards may set reasonalbe [sic] fees for courses requiring laboratory and shop materials and equipment; provided, however, such fees shall be waived for students who cannot afford to pay the fees."

■■ The long-standing rule of statutory construction in Alabama and elsewhere is that repeals by implication are not favored and the intent of the legislature to repeal must be clear and manifest. *Mills v. Court of Commissioners of Conecuh County*, 1929, 204 Ala. 40, 85 So. 564, and cases cited; *Randle v. Payne*, 1958, 39 Ala.App. 652, 107 So.2d 907, 910; *Regional Rail Reorganization Act Cases*, 1974, 419 U.S. 102, 133, 95 S.Ct. 335, 353, 42 L.Ed.2d 320, 347 and cases there cited; *Morton v. Mancari*, 1974, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290, 301, quoting *United States v. Borden Co.*, 1939, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181, 190.

■ Act No. 129 is merely an annual appropriations measure. It makes no reference to the statutes challenged here. The Act covers only a short period of time, while the statutes here involved operate permanently unless and until repealed or held unconstitutional. As to some of the fees permitted by the statutes here involved, the Act has no effect whatever. It is clear that the passage of Act No. 129 did not render this case moot.

## III. *Issues Not Adequately Briefed*

The parties have not adequately discussed in their briefs the effect, if any, on this case of the final judgment of the Northern District of Alabama in the Birmingham City School System case from which judgment neither the Attorney General nor any other party has appealed. Nor have the parties discussed other

questions, such as whether, in the light of the prior rulings and decisions discussed in Part I of this opinion, there exists a substantial federal question, or whether this Court should consider some action or non-action in the light of the two cases, one involving the Pickens County System and the other involving the Tuscaloosa City System, which have remained inactive in the Western Division of the Northern District of Alabama.

There remains, however, another ground which may prevent us from reaching the merits, and which has been briefed by both the plaintiffs and the defendants; that is, whether the Attorney General of Alabama has standing on his sole authority, either as Attorney General or on behalf of the State of Alabama, to institute this action.

Article III, the Judicial Article of the Constitution requires that federal courts hear only "cases or controversies." These words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. *Flast v. Cohen*, 1968, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. It was early held in *Correspondence of the Judges* (1793)[5] that the Supreme Court is without power to render advisory opinions due to this "case and controversy" requirement.

"Standing" involves the stake the plaintiff has in the outcome of the case or controversy. The leading case on standing is *Baker v. Carr*, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, where the Court said:

" . . . Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing. It is, of course,

a question of federal law." 369 U.S. 204, 82 S.Ct. 703, 7 L.Ed.2d 663, 678.

Until 1968, the rule was without exception that a state official does not have such an interest in vindicating the Federal Constitution as to give him standing to attack the validity under that Constitution of the state statute which he is charged with enforcing. Hart and Wechsler, *The Federal Courts and the Federal System* 182 (2d ed. 1973). In *Board of Education v. Allen*, 1968, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060, the Supreme Court allowed suit to be brought against the Commissioner of Education of New York by a local school board to challenge the constitutionality of a New York law requiring the Board to lend textbooks free of charge to students in parochial schools. Although standing of the school board to bring suit was not raised on appeal to the United States Supreme Court, 392 U.S. at 241, 88 S.Ct. at 1925, 20 L.Ed.2d at 1064, the Court dealt with this aspect of the case in a footnote as follows:

"Appellants have taken an oath to support the United States Constitution. Believing § 701 to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with § 701—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that appellants thus have a 'personal stake in the outcome' of this litigation. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)." 392 U.S. at 241 n. 5, 88 S.Ct. at 1925, 20 L.Ed.2d at 1064.

The "violation of the oath" rationale of *Allen* was extended in *Delchamps v. Alabama State Milk Control Board*, M.D. Ala.1971, 324 F.Supp. 117, 118, to a case where the attorney general chose not to assume his customarily assigned duty to defend the state's legislation, but joined

---

5. See Hart and Wechsler, *The Federal Courts and the Federal System* 64 *et seq.* (2d ed. 1973).

the plaintiffs in seeking to have the Alabama Milk Control Act declared unconstitutional. There, the court (Judges Rives, Johnson and Pittman) said:

> "When and if there is a conflict between the state law and the federal law in areas where the federal law is applicable, the Supremacy Clause controls. Thus, if the Attorney General for the State of Alabama is of the opinion that certain enactments of the Alabama Legislature are clearly violative of the Constitution of the United States, this Court does not conceive that he is under any duty to attempt to defend such legislative enactments." 324 F.Supp. 117, 118.

Ironically, the statute that the State's Attorney General challenged as "unconstitutional" was held by the court to be constitutional. *Baxley v. Alabama Dairy Commission*, M.D.Ala.1973, 360 F.Supp. 1159.

Again in *Suitts v. Alabama Commission to Preserve the Peace*, C.A. No. 75–331–N (Order of January 29, 1976) the Attorney General was permitted to intervene in a pending case and to contest the validity of certain enactments of the Alabama Legislature as violative of the Constitution of the United States.

As has been pointed out in footnote 4, *supra,* Judge Sam C. Pointer, Jr. of the Northern District of Alabama has permitted the Attorney General originally sued as a defendant to continue in the litigation as a party plaintiff.

■ The present case goes a step beyond any of the three cases to which we have referred. Here the Attorney General acting alone seeks to attack the constitutionality of an Alabama statute. To do so the Attorney General must have a "personal stake. in the outcome" of this litigation. *Baker v. Carr*, 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678. The same requirement is stressed in *Board of Education v. Allen, supra*, 392 U.S. at 241 n. 5, 88 S.Ct. at 1925, 20 L.Ed.2d at 1064, and is repeated in *Flast v. Cohen, supra*, 392 U.S. 83, 99, 100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, 961:

> "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.[21]

> "[21] This distinction has not always appeared with clarity in prior cases. See Bickel, Foreword: The Passive Virtues, The Supreme Court, 1960 Term, 75 Harv.L.Rev. 40, 75–76 (1961)."

■ The extent of the powers conferred on the Attorney General of Alabama by the state constitution and statutes can be adjudged with final authority only by the Supreme Court of Alabama. That Court has indicated that the Attorney General's powers are as broad as the common law unless restricted or modified by statute. *State v. Jones*, Ala.1949, 41 So.2d 280, 284. The question for decision in that case was

> "whether the attorney general of Alabama is authorized and empowered to settle a pending suit by the State filed by him in his official capacity for the collection of an unliquidated tax claim, by taking a consent judgment in the cause for less than the amount sued for and claimed to be due by the tax department." 41 So.2d 282.

The Court answered that question in the affirmative, saying:

> "So pretermitting any question of bad faith, which is not here raised, it

is our conclusion that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law." 41 So.2d 285.

The Court was not called upon to rule as to whether the Attorney General's pow-. ers extend beyond the representation of the State itself. In the present case the Attorney General argues that he is the official representative of the State as *parens patriae* for its citizens. We need not decide whether the State is the proper party to represent the people of the State in this case or whether their federal rights are so involved that it is the United States, and not the State, which represents the citizens of the State as *parens patriae.* See *Massachusetts v. Mellon,* 1923, 262 U.S. 447, 481, 482, 43 S.Ct. 597, 598, 599, 67 L.Ed. 1078, 1082, 1083; *Florida v. Mellon,* 1927, 273 U.S. 12, 18, 47 S.Ct. 265, 266, 71 L.Ed. 511, 515; *South Carolina v. Katzenbach,* 1966, 383 U.S. 301, 324, 86 S.Ct. 803, 816, 15 L.Ed.2d 769, 784.

The Attorney General argues that he also has "a responsibility to serve as protector of the general public, *i. e.,* the people of the State, especially with regard to those situations in which the Attorney General believes a statute involving the public interest to be unconstitutional." (Brief p. 3.)

The Supreme Court of Alabama has not written so extensively about the extent of the common law powers of the Alabama Attorney General as has the Supreme Court of Florida about the powers of the Florida Attorney General. See *State ex rel. Shevin v. Yarbrough,* Fla.1972, 257 So.2d 891; *State of Florida ex rel. Shevin, Attorney General v. Exxon Corporation,* 5 Cir. 1976, 526 F.2d 266 [1976].

It may be appropriate to leave to the Supreme Court of Alabama the authoritative decision as to the extent of the powers and responsibilities of the Alabama Attorney General. If his powers and responsibilities are so extensive as to permit him in his own name and in the name of the State to seek declaratory and injunctive relief from a federal district court as to any statute of the State of Alabama, the balance of powers between the three departments of state government may be seriously disturbed.[6] All members of the state legislature and all executive and judicial officers of the State are bound by oath or affirmation to support the Constitution of the United States as the supreme law of the land.[7] It is possible, and even probable, in the light of the provision of section 3(d) of Act No. 129 of the 1975 Regular Session of the Legislature of Alabama, which we have quoted on typed page 5 of this opinion, that the Legislature may require the Attorney General to defend the very type of case which he now seeks to prosecute.[8] The balance of power within

6. "Section 42. The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: That which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Const. of Ala., § 42.

7. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

"The Senators and Representatives before mentioned, and the Members of the several

State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." Clauses 2 and 3 of art. 6 of the Constitution of the United States.

8. The last sentence of Amendment 111 to the State Constitution provides:

"The legislature may require the attorney general to defend any or all suits brought against the state, or any subdivision thereof, or against any state school board or state board of education, or against any county or city school board or board of education, or against like boards or commissions by whatever name designated, or against any mem-

the executive department may also be disturbed.[9] If before this litigation terminates either the Legislature or the Governor should direct the Attorney General to defend rather than to prosecute this kind of case, the Attorney General would probably be bound not to continue his prosecution of the present action in this Court or on appeal.[10] On its part, the federal trial or appellate court would be faced with litigation which, assuming it ever did, would no longer present a case or controversy under Article III of the United States Constitution. This litigation would have to be dismissed as moot.

■ Under Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of the Attorney General to institute and prosecute this action must be determined by the law of the State of Alabama. Uniquely, the Attorney General's capacity in the present case might be decided contrary to his present view by the Alabama Legislature or by the Supreme Court of Alabama. Any such decision would obviate the necessity of deciding whether Title 52, § 437 of the Code of Alabama violates the Fourteenth Amendment. Thus, regardless of any question strictly of jurisdiction, there would seem to be presented a classic case in which this Court should abstain. Yet the doctrine of abstention has not been argued.

Rule 17(a), F.R.Civ.P. requires that every action be prosecuted by the real party in interest. According to the averments of the complaint, neither the Attorney General nor the State of Alabama appears to be the real party in interest. Paragraphs 2 and 3 of the complaint read as follows:

"2.

"Plaintiff William J. Baxley is the Attorney General of the State of Ala-

bama. Pursuant to the common law and statutory powers and duties of his office, the Attorney General brings this action on behalf of the citizens of the State of Alabama, including, but not limited to, all students and parents or guardians of students in the Alabama public schools.

"3.

"Plaintiff State of Alabama is a sovereign State of the United States of America and brings this action, by and through its Attorney General, William J. Baxley, on its own behalf and as *parens patriae* for the citizens of Alabama, including, but not limited to, all students and parents or guardians of students in the Alabama public schools."

The case involving the Birmingham City School System which proceeded to the final judgment, quoted on typed page 4 of this opinion, was brought by the real parties in interest. As expressed in Judge Pointer's pretrial order of February 4, 1972:

"5.   .   .   .

"B. The plaintiffs are children in each of the three systems who claim to be members of families unable to pay such fees and who claim that their rights to equal protection in the enjoyment of public education have been violated by the actions of the respective Boards or the particular policies at particular schools.   .   .   .

"6. The case of those plaintiffs who are students or parents of students in the Birmingham City School System is hereby docketed for trial at 9:00 a. m., February 23, 1972.   .   .   ."

It seems obvious that this case should be dismissed because it is not brought by the real parties in interest. Yet that point is not pressed. The parties have

---

bers, officers or employees of any such boards, or against any school official or employee throughout Alabama."

9. "Sec. 113. The supreme executive power of this State shall be vested in a chief magistrate, who shall be styled 'The Governor of the State of Alabama.'"   Const. of Ala., § 113.

10. Presently we do not think that the Attorney General can be required to prosecute a case of this kind so long as he remains of the opinion that to do so would be violative of his oath required by Art. 6, cl. 3 of the Constitution of the United States.

failed to distinguish the concepts of real party in interest, capacity to sue and be sued, and standing to sue. See Wright-Miller, *Federal Practice & Procedure Civil*, Vol. 6, § 1542, Vol. 13, § 3531. We proceed to discuss the last of those concepts—standing to sue.

### IV. *Standing to Sue*

We repeat that the Attorney General sues both in his official capacity as Attorney General and as relator in the name of the State of Alabama, but in each capacity for the benefit of private persons, citizens, students, parents, and guardians. May the State attack in federal court its own statutes as violative of the Constitution of the United States? That seems incongruous. It is settled that the State has no standing as the parent of its citizens to attack acts of Congress as violative of provisions of the Constitution of the United States, when the constitutional provisions are intended as protections for private persons,[11] because the United States itself is the ultimate *parens patriae* of every American Citizen.[12] A fortiori that principle should apply to an attack by the State upon the validity of an enactment of its own legislature. We conclude that no standing was added when the Attorney General sued as relator for and in the name of the State.

We emphasize that this case is instituted solely upon the authority of the Attorney General. His mind alone is the directing force. In the unlikely event that he becomes convinced that the Alabama statutes under attack are not violative of the Constitution, or if he

should be succeeded by another who so concludes, then certainly at that time this case would lack "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr, supra,* 369 U.S. at 204, 82 S.Ct. at 691, 7 L.Ed.2d at 678, quoted and followed in *Flast v. Cohen, supra,* 392 U.S. at 99, 88 S.Ct. at 1952, 20 L.Ed.2d at 961.

The subjective opinion of the Attorney General without any other personal stake in the outcome is too weak a base to support the concept of standing and the jurisdictional requirement of a case or controversy between parties with adversary interests. An order will be entered sustaining the motion of the defendants to dismiss this action for lack of jurisdiction.[13]

### ON MOTION FOR NEW TRIAL

It appears to the Court from the Plaintiffs' "Motion for New Trial and/or to Alter or Amend Judgment," and the brief in support of said motion, that whether the Plaintiffs have standing to institute suits in the public interest can more properly be decided in the first instance by the state courts. This Court's opinion had clearly indicated that as to such matters this Court would abstain. The order of March 10, 1976 dismissed the Plaintiffs' complaint, as amended, for lack of jurisdiction and without prejudice to the merits of said complaint. We find no error in that order. Plaintiffs' "Motion for New Trial and/or to Alter or Amend Judgment" is therefore DENIED.

11. The Fourteenth Amendment meets this requirement. As well said by Chief Justice Hughes for the Court:

"... the protection of the Fourteenth Amendment against state action is only for the benefit of those who are injured through the invasions of personal or property rights or through the discriminations which the amendment forbids. The constitutional guaranty does not extend to the mere interest of an official, as such, who has not been deprived of his property without due process of law or denied the equal protection of the

laws." (Footnotes omitted.) *Columbus & Greenville Ry. v. Miller,* 1931, 283 U.S. 96, 99-100, 51 S.Ct. 392, 394, 75 L.Ed. 861, 865.

12. *Massachusetts v. Mellon, supra,* 262 U.S. at 485, 486, 43 S.Ct. at 600, 67 L.Ed. at 1084. *Florida v. Mellon, supra,* 273 U.S. at 18, 47 S.Ct. at 266, 71 L.Ed. at 515. *South Carolina v. Katzenbach, supra,* 383 U.S. at 324, 86 S.Ct. at 816, 15 L.Ed.2d at 784.

13. Which, of course, does not operate as an adjudication upon the merits. Rule 41(b), F.R. Civ.P.