The Honorable Cliff FINCH, Governor of
the State of Mississippi, et al.,
Plaintiffs-Appellants,

v.

MISSISSIPPI STATE MEDICAL
ASSOCIATION, INC., et al.,
Defendants-Appellees.

No. 78–2138.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1978.

George Colbin Cochran, Alvin M. Binder, Jackson, Miss., for plaintiffs-appellants.

William N. Reed, Walker W. Jones, III, L. Arnold Pyle, Jackson, Miss., for Miss. State Pharmaceutical Ass'n.

Nap L. Cassibry, II, Gulfport, Miss., Peyton S. Irby, Jr., Jackson, Miss., for Miss. Optometric Ass'n.

James K. Child, Jr., J. Leray McNamara, Jackson, Miss., for Miss. State Medical Ass'n.

John L. Maxey, II, Robert W. Sneed, Jackson, Miss., for Miss. Nurses Ass'n.

Timmie Hancock, Asst. Atty. Gen., A. F. Summer, Atty. Gen., Edwin A. Snyder, R. Lloyd Arnold, Sp. Asst. Atty. Gen., Jackson, Miss., for Miss. State Bd. of Dental Examiners.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Mississippi State Board of Health is a state agency composed of thirteen members. Twelve are appointed by the Governor; the thirteenth, the executive officer, is elected by the appointed members. Section 41–3–1 of the Mississippi Code[1] provides

---

1. Section 41–3–1 provides:

The State Board of Health shall consist of thirteen (13) members. Twelve (12) of said members are to be appointed as herein provided; the thirteenth member, to be known as the executive officer, is to be elected by the twelve (12) appointive members as provided in Section 41–3–5.

Eight (8) of the appointive members shall be regular qualified physicians of the state and members of the State Medical Association. They shall be nominated to the Governor by the State Medical Association, three (3) from each congressional district in the state, from which number the Governor shall appoint one (1) from each congressional district; the appointments shall be confirmed by the Senate.

One (1) appointive member shall be a regularly licensed, registered and practicing dentist within the State of Mississippi for a period of five (5) or more years next preceding his appointment. The Governor shall appoint one (1) dentist from the list submitted to him in accordance with section 73–9–7. The appointment shall be confirmed by the Senate.

One (1) appointive member shall be an optometrist of the state and a member of the Mississippi Optometric Association. The Mississippi Optometric Association shall nominate to the Governor three (3) optometrists from the state-at-large, from which number the Governor shall appoint one (1); the appointment shall be confirmed by the Senate. The optometrist member shall not, however, participate in the examination of applicants for a license to practice medicine.

One (1) appointive member shall be a registered pharmacist of the state and a member of Mississippi Pharmaceutical Association. Said association shall nominate to the Governor five (5) pharmacists from the state-at-large, from which number the Governor shall appoint one (1); the appointment shall be confirmed by the Senate. The pharmacist member will not participate in the examination of applicants for a license to practice medicine.

One (1) appointive member shall be a registered nurse licensed to practice in the state and a member of the Mississippi Nurses' Association. The Mississippi Nurses' Association shall nominate to the Governor three (3) registered nurses from the state-at-large, all of whom shall be actively employed in the practice of nursing at the time of nomination and for a period of at least five (5) years preceding the nomination, from which the Governor shall appoint one (1); the appointment shall be confirmed by the Senate. The registered nurse member shall not, however, participate in the examination of applicants for a license to practice medicine.

Whenever any vacancy among the appointed members of the board shall occur, the Governor shall fill the same by appointment upon a recommendation of the State Medical Association, or from the list of dentists referred to above, or the Mississippi Optometric Association, or from the Mississippi Pharmaceutical Association, or the Mississippi Nurses' Association, respectively, at the next regular meeting, to fill the said unexpired term.

The terms of office of the appointed members shall be such that three (3) shall expire January 1, 1932, three (3) January 1, 1934 and three (3) January 1, 1936; thereafter the

that eight are to be qualified physicians who are members of the State Medical Association and nominees of that Association; four others are to be similarly appointed from nominees, respectively, of the Mississippi State Board of Dental Examiners, the Mississippi Optometric Association, the Mississippi Pharmaceutical Association and the Mississippi Nurses' Association. The Governor of Mississippi, two black doctors, seeking to represent a class composed of black physicians, and four other individual plaintiffs launched a multi-pronged attack on Mississippi's statutory method of selecting members of the State Board of Health, contending primarily that the process discriminates against blacks in violation of 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment to the Constitution, but attacking it also on a number of other fronts. Although the plaintiffs allege, generally, the unconstitutionality of various sections of the Mississippi Code,[2] it is apparent that their attack focuses on the alleged unconstitutionality of section 41–3–1 on its face and as applied.

The trial judge treated a motion to dismiss the action as a motion for summary judgment because each party had presented evidentiary material by way of affidavit and each, he said, had been given full opportunity to respond to the matters presented by opposing parties; he then decided

appointments shall be made so that each member shall serve the full term of six (6) years.

Because of certain discrepancies between the different published texts of the statute, we have followed the precise wording of the law as it was originally passed by the Mississippi Legislature, Regular Session 1977, Senate Bill No. 2033.

2. Plaintiffs' prayer for relief requests declaratory judgment against § 41–3–1 and all other related statutes. Plaintiffs specifically mention three other statutes in their complaint.

Section 41–1–1 provides:

The Mississippi State Medical Association, and all other state, district, and county medical societies and associations of the state in affiliation with the purposes of its organization, are hereby constituted the "Mississippi Department of Public Health." Any licensed practitioner of medicine in the State of Mississippi, may, on application, have his name enrolled as a member of said department.

Section 41–3–15 provides:

It is the duty of the state board of health to supervise the health interests of the people, to investigate the causes and means of prevention of endemic and epidemic diseases; to investigate the sources of mortality, and the effect of localities, habits, employments and conditions upon the public health; to investigate the sanitary condition of schools, prisons, public institutions, railroad cars, and all buildings and places of public resort, and to recommend such measures of sanitation for them as it may deem advisable.

The board shall, in all institutions of the state, regularly inspect the food handling and food preparation facilities, all dairies and dairy herds, canning plants, and all other facilities used for the manufacturing, preparation, growing or raising of food. The board shall have full authority to issue an order or orders to any such institution of the state found not to be in compliance with the minimum rules and regulations, as established by the state board of health, to cease the use or operation of any facility or facilities found inadequate by the board.

Further, it shall be the duty of the board to prescribe rules and regulations for the conduct of county health officers; to require of the county health officers, of municipal boards of health, of physicians, of the managers or keepers of schools, prisons, public institutions, and buildings or places of public resort such sanitary information as may be useful; to collect and preserve such information relating to diseases and deaths as may be useful in the discharge of its duties; to keep a central registry for use of the medical profession regarding pathological information on cancer patients, their treatment and the results, in order to aid in future care of cancer patients; and to advise the state and all local governments in all hygienic matters. The board shall cause its secretary to keep a complete record of all its transactions, and to preserve all books, documents, reports and correspondence and other matters pertaining to its business.

Section 41–3–59 provides:

Except as may otherwise be provided, any person who shall knowingly violate any of the provisions of this chapter, or any rule or regulation of the state board of health, or any order or regulation of the board of supervisors of any county herein authorized to be made, shall be guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding fifty dollars, or by imprisonment in the county jail for not more than one month, or by both.

Plaintiffs do not offer any specific challenge to these statutes. Apparently they are mentioned in the complaint because they are related to the statute directly under attack.

that the plaintiffs had failed to show the existence of a case or controversy between persons with proper standing and defendants against whom a cause of action had been stated. Moreover, he concluded that the court should abstain from deciding the case because the same issues were or could be raised in a pending state proceeding.

The issues raised are too complex and intertwined to permit a facile resume. After analyzing each of the questions involved, however, we conclude that those black physicians who seek to represent a class of black doctors have stated a claim for which relief can be granted, that this class does have standing to sue against one defendant, and that their claim was, therefore, improperly dismissed. However, this putative class action properly lies against only one defendant, the Mississippi State Medical Association, Inc., and, because it is possible that under Mississippi state law that association may not be given nominating authority or the statute may be invalid for some other reason, the federal class action claims against it should abide for a reasonable period of time until the state law issues can be resolved. In addition, we find that Dr. Mason has standing to assert a claim against the association and that he seeks relief that might properly be allowed. The action was properly dismissed as to the claims of the other plaintiffs and as to all claims against the other defendants. Having encapsulated the conclusions, we turn to a detailed analysis of the facts and the applicable legal authorities.

## I. BACKGROUND

Because of the variety both of plaintiffs and of the claims they present, we first list the dramatis personae. One of the plaintiffs, Cliff Finch, is the Governor of Mississippi; two, Drs. Gilbert R. Mason and Albert B. Britton, Jr.,[3] are black physicians;

three, Drs. Howard D. Clark, William A. Middleton and George W. Howell are white physicians. Juanita W. Ginn is a black female citizen of Mississippi. There is no plaintiff who is a dentist, optometrist, pharmacist, or nurse, and none who purports to represent a class including members of any of these professions.

The plaintiffs allege that no black physician has ever been nominated for appointment to the Board of Health by the Mississippi State Medical Association, and that the Governor has appointed Dr. Mason, one of the black-physician-plaintiffs, to the Board of Health, together with Drs. Clark and Middleton, two white-physician-plaintiffs, but the Senate has refused to confirm these appointments because the nominations were not submitted by the Mississippi State Medical Association although all were suggested by the Mississippi Medical and Surgical Association, a society composed predominantly of black doctors.

Ms. Ginn appears as representative of two classes: poor, needy and indigent citizens of Mississippi, and all female citizens who are consumers of health services. She seeks to protect the interests of those classes and asserts that both females and poor people are systematically excluded from consideration for appointment to the Board of Health.

Dr. Howell asserts that the class of plaintiffs of which he is a member is systematically excluded from membership on the Board; although the complaint does not define this class, we infer that it consists of physicians who are not members of the State Medical Association.

Governor Finch asserts that the impugned Mississippi statute contravenes the federal and state constitutions,[4] and that, if he enforces the Mississippi statute, he will violate both of them as well as the oath he

---

3. The record does not reveal Dr. Britton's race; in oral argument counsel for plaintiff stated that Dr. Britton is black. This is also fairly inferable from the uncontroverted allegation that Dr. Britton is president of the Mississippi Medical and Surgical Association which is a predominantly black organization.

4. He specifically alleges that the statute is an unauthorized delegation of legislative power to a private association, the Medical Association; he does not mention the identical issue with respect to the other defendants.

has sworn to uphold them. In addition, if he enforces the statute, he may be sued by members of the black race.

The complaint seeks a declaratory judgment that the Mississippi statute violates the First Amendment by improperly limiting the right of all of the plaintiffs to free speech and association; that it unlawfully delegates legislative power and fails to set forth adequate standards, thus violating both the state and federal constitutions; that it creates an arbitrary classification, violating equal protection rights; that the statute is ambiguous because it refers to "the State Medical Association" without indicating whether the term means the Mississippi State Medical Association, which did not admit any black doctors until 1966, or the later formed Mississippi Medical and Surgical Association, most of whose members are black. It exhorts expedited hearing and speedy disposition.

The facts concerning whether there has been discrimination based on race, sex, or indigency are apparently disputed. With respect to any issues that turn on these questions, summary judgment was inappropriate. Rules 12(c) and 56, Federal Rules of Civil Procedure. The material facts necessary to the resolution of the other issues now presented in the case, however, are not genuinely disputed. We shall refer to them as we analyze the issues. The questions raised by the defendants are each dealt with separately in our discussion.

## II. STANDING

■ The Constitution of the United States limits the judicial power of federal courts to cases and controversies. Art. III, § 2, cl. 1. It is implicit in this limitation that federal courts may undertake to decide only those disputes capable of and suitable for judicial resolution. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Insurance Co. v. Haworth,* 1937, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621. Such a dispute arises only when it is asserted by a person who has a direct interest in its deter-

mination. *S. v. D.,* 1973, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536. This quality is summed up in the word "standing."

■ As an aspect of justiciability, standing is, and can only be, demonstrated by a plaintiff who has a personal interest in the outcome of the controversy, not merely an interest as a citizen, however earnest, in obtaining a decision on a question of concern. *Schlesinger v. Reservists Committee to Stop the War,* 1974, 418 U.S. 208, 220, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706, 718; *Ex parte Levitt,* 1937, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493. Thus, the "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678. *See also Regents of University of California v. Bakke,* 1978, —— U.S. ——, —— n. 14, 98 S.Ct. 2733, 2743, 57 L.Ed.2d 750, 765. In essence, a litigant lacks standing to sue in federal court if he does not demonstrate that the actions complained of cause him injury in fact different from that suffered by citizens at large. *Compare Association of Data Processing Service Organizations, Inc. v. Camp,* 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184. Under our constitution questions of injury to the general public are not to be resolved by the judiciary. *See Schlesinger, supra,* 418 U.S. at 222, 94 S.Ct. at 2933, 41 L.Ed.2d at 719.

## MS. GINN'S CLASS ACTIONS

■ Insofar as Ms. Ginn seeks relief either on behalf of a class composed of all poor, needy and indigent citizens (who, she asserts, constitute a majority of Mississippi's population) or on behalf of all females (who comprise approximately 50% of its populace), she has neither alleged nor shown any particularized injury as a result of the Mississippi statute. *See, e. g., Warth v. Seldin,* 1975, 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2205–07, 45 L.Ed.2d 343, 354–56;

*Schlesinger, supra,* 418 U.S. at 216–27, 94 S.Ct. at 2930–35, 41 L.Ed.2d at 716–22; *Sierra Club v. Morton,* 1972, 405 U.S. 727, 734–40, 92 S.Ct. 1361, 1366–69, 31 L.Ed.2d 636, 643–46.

## MS. GINN, INDIVIDUALLY

■ Ms. Ginn has also filed suit individually. She does not allege and she has offered no proof to show that she personally has been harmed by the actions of any of the defendants. She does not even contend that, but for the statute or the defendants' actions, she would be nominated to the Board. As the district judge succinctly said, "she has no more interest in this matter and no more standing in this cause than any other citizen would have in filing a lawsuit challenging any statute, regulation or policy" of any government agency. She asserts merely a "generalized grievance" which, under the criteria we have discussed, is not sufficient to convey standing.

## THE CLASS ACTION ON BEHALF OF BLACK DOCTORS

■ On the other hand, Drs. Mason and Britton have alleged facts sufficient to show their standing as representatives of a class of black doctors. Dr. Mason has in fact been appointed to the Board by the Governor; he alleges that, but for the statute and racial discrimination in its application, he could serve. Dr. Britton, a member of the Mississippi State Medical Association, has not been appointed but he alleges a personal injury in the deprivation on racial grounds of his ability to be considered. *See Bakke, supra,* —— U.S. at —— n. 14, 98 S.Ct. at 2743, 57 L.Ed.2d at 765. Together, as a class, the black doctors of Mississippi are aggrieved if they can prove that they are barred by discrimination from state appointment. No question has been raised concerning the typicality of the claims of Drs. Mason and Britton as representatives

of a class composed of black doctors practicing in Mississippi or their ability fairly and adequately to protect the interests of those doctors. This class, with the two black physicians as its representatives, has both the requisite standing to sue and the apparent right to have the class certified under Rule 23, F.R.C.P., so that they may attempt to prove (if they can) that the Mississippi statute has been applied so as to. discriminate against black persons.[5]

The trial court did not deal with the claims asserted on behalf of the class of black doctors. Instead of dismissing this action, he should have certified the class and allowed the action to proceed.

## DR. MASON, INDIVIDUALLY

■ While recognizing that Dr. Mason individually has standing to sue, the trial court found that he had failed to assert an appropriate claim for relief from the named defendants. Focusing only on the claims asserted by him as a class member against the Mississippi State Medical Association, we believe that the able trial judge erred. Dr. Mason explicitly alleged that he had been appointed by the Governor and, but for the statute which he contests, would properly be serving on the Board.[6] Thus, he alleges a direct personal interest in the unconstitutionality of the statute. He contends further that, in playing its official role under the statute, the Mississippi State Medical Association has discriminated against black doctors and that, but for this discrimination, he would be able to serve. He contends both that the statute authorizing the Association to make nominations and its "acts and practices pursuant thereto are void and unconstitutional." If the allegations are proved, these would suffice to warrant an injunction against the making of nominations by the Association, or, if it is permitted to continue to nominate, against

---

5. If, however, that statute is unconstitutional under Mississippi law, it does not bar their nomination to the Board of Health. Their claims against the Medical Association would then be moot, despite their standing. We will later discuss this issue.

6. Dr. Mason's authority as a member of the Board of Health has been challenged in a *quo warranto* suit brought by the State of Mississippi in state court. *See* § III, *infra.* Thus, his cause of action here is not moot merely because he has been appointed by the Governor.

discriminatory application of the nominating power.

Even were we to agree with the trial judge that "[t]he entire thrust of the complaint . . . is an attack on the operation of [the Mississippi statute]," the conclusion that the Mississippi State Medical Association is "simply incapable of granting any relief to Dr. Mason" is incorrect; the Association might grant him relief simply by nominating him or by ceasing to discriminate against black doctors (should such discrimination be proved). Therefore, the action should not have been dismissed as to his individual claim.

## GOVERNOR FINCH

The Governor seeks to find a place for standing by placing himself firmly on three (3) claims: he must violate his oath of office to uphold the laws of Mississippi if he ignores the statute and he must violate his oath to uphold the Constitutions of Mississippi and the United States if he obeys it; in his opinion the statute violates both constitutions; and if he fails to act, he may be sued for damages.

In *Board of Education v. Allen,* 1968, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060, contrary to long standing practice, *see* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 182 (2d ed. 1973), the Supreme Court held that members of a school board had, by virtue of a similar oath, standing to challenge a state statute they believed violative of the federal constitution.[7] A few years later, in *City of New York v. Richardson,* 2 Cir. 1973, 473 F.2d 923, *cert. denied,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002, and *Aguayo v. Richardson,* 2 Cir. 1973, 473 F.2d 1090, *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101, the Second Circuit broadly asserted that under the authority of *Allen* "plaintiffs who sued in their official capacities may assert constitutional claims against the state." *City of New York,* 473 F.2d at 933. *Accord, Aguayo,* 473 F.2d at 1100.

With due respect, we believe that our colleagues on the Second Circuit have stated the rule derived from *Allen* too widely, especially in light of the Supreme Court's more recent pronouncements on the subject of standing. *See, e. g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 1977, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450; *Simon v. Eastern Kentucky Welfare Rights Organization,* 1976, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450; *Warth v. Seldin, supra.* Two more recent opinions, from two different three-judge courts, while no more binding on us, persuasively express the meaning of the *Allen* footnote. In *Athanson v. Grasso,* D.Conn.1976, 411 F.Supp. 1153, the three-judge court was required to analyze carefully the interpretation placed upon *Allen* in *City of New York* and *Aguayo* because, as a district court within the Second Circuit, it was bound to follow the law of the circuit. *Id.* at 1157. The court examined the Supreme Court's opinion closely, and found that the *Allen* plaintiffs were in danger of expulsion from office at the hands of the defendant if they did not obey the statute. In *Athanson* the plaintiffs were in no danger of expulsion because they were elected officials; the defendants could not remove them from office. Further, the *Athanson* court pointed out that while in *Allen* the plaintiffs could argue that the statute at issue was specifically forbidden by the establishment clause of the first amendment, the *Athanson* plaintiffs were not required to do anything that was specifically prohibited by an express term of the constitution. The *Athanson* court thus found that the plaintiffs,

7. The Court said:
 Appellees do not challenge the standing of appellants to press their claim in this Court. Appellants have taken an oath to support the United States Constitution. Believing § 701 to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with § 701—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that appellants thus have a "personal stake in the outcome" of this litigation. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). 392 U.S. at 241 n. 5, 88 S.Ct. at 1925, 20 L.Ed.2d at 1064.

elected city officials, did not have standing to bring their suit against the defendant state officials merely by virtue of their oath of office.

In *Baxley v. Rutland,* M.D.Ala.1976, 409 F.Supp. 1249, another three-judge court was faced with a violation of oath argument based on the *Allen* footnote. The *Baxley* court held that the Attorney General of Alabama lacked standing to challenge an Alabama statute authorizing a matriculation fee for high school students because he lacked a personal stake in the outcome of the case. It is evident that the Attorney General was in no danger of expulsion from office at the hands of the defendants, although that point was not discussed in the *Baxley* opinion. We also note that, unlike the *Allen* plaintiffs, the Attorney General did not risk the loss of funds for his agency if he refused to comply with the statute at issue.

■ Governor Finch is in the same position as the plaintiffs in *Athanson* and *Baxley* who, despite the violation of oath rationale derived from *Allen,* were found to lack standing. The Governor, as an elected official, is in no danger of expulsion from office as a result of any action that he alone believes may have violated his oath. He is certainly in no danger of expulsion at the hands of the defendant professional associations. Furthermore, there is no allegation that his office is in any danger of a loss of funds (and particularly a loss as a result of any action the defendants may take) if the Governor refuses to comply with the statute. Thus Governor Finch has no standing by virtue of his oath of office because, without more, this alone is not a sufficient personal stake.

The belief of a public official that a state statute is in violation of the federal constitution was held insufficient to give him standing to seek relief from a federal court in *Baxley v. Rutland, supra.* But see *Delchamps, Inc. v. Alabama State Milk Control Board,* M.D.Ala.1971, 324 F.Supp. 117 (three-judge court). The logic of the *Baxley* opinion is persuasive. The mental disposition of the Governor is all that gives him cause to complain; were he to change his mind tomorrow and decide, rightly or wrongly, that the state statute is valid, he would no longer have any interest in the case. He has no personal stake in the outcome of this case; he will not be affected favorably by a decision that the statute is unconstitutional nor adversely by a decision that it is valid. See *Warth v. Seldin, supra.*

■ The general threat of suit alleged here does not suffice to give the Governor an adequate interest in the case. See *O'Shea v. Littleton,* 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674. There has in fact been no such suit and, in view of the Governor's appointment of Dr. Mason, none appears likely. The threat of suit by some black constituents if the Governor does not make good on campaign promises is far less imminent and certain than the threat found sufficient in *Steffel v. Thompson,* 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505. In *Steffel* the parties stipulated that a companion of the petitioner had already been arrested and that, if petitioner engaged in the disputed conduct again, he would also be arrested.[8]

There is, however, another infirmity in the Governor's standing; he has not chosen

8. Even if the allegedly threatened suit is brought against the Governor, it is extremely unlikely that he would be held liable for the Medical Association's failure to nominate blacks for appointment to the Board of Health. In *James v. Wallace,* 5 Cir. 1976, 533 F.2d 963, 964 n.2, the Fifth Circuit noted that there was "no basis for concluding that the Governor's choice of nominees for the appointments was racially discriminatory" because the Governor of Alabama was required to make appointments to the Mental Health Board from a list submitted by the Board. No case has been cited where an executive officer has been held personally liable in the making of appointments, even in the situation where the appointments were completely discretionary. *Compare Mayor of Philadelphia v. Educational Equality League,* 1974, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630; *Carter v. Jury Comm'n,* 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549. Governor Finch would also have the benefit of immunity from liability for damages under § 1983 granted to high public officials. *See Wood v. Strickland,* 1975, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214; *Scheuer v. Rhodes,* 1974, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90; *Athanson v. Grasso, supra,* 411 F.Supp. at

to abide by the law he challenges, but to make nominations that disregard its provisions. Having chosen to break its fetters, he can no longer claim that they bind him. Thus, the Governor has not been harmed by the law. He has not shown an injury to himself sufficient to warrant invocation of federal jurisdiction in his behalf.[9] *See, e. g., Warth v. Seldin, supra,* 422 U.S. at 498–99, 95 S.Ct. at 2205, 45 L.Ed.2d at 354. Moreover, we note that, despite his expressed opinion that the statutory limitation on the appointment process is unconstitutional, Governor Finch has acted inconsistently with that position in other official actions.[10]

Thus we find that Governor Finch lacked standing to bring this suit under federal law; we therefore pretermit the question whether he had procedural capacity to bring it under state law.[11]

## DOCTORS CLARK AND MIDDLETON, INDIVIDUALLY

█ Doctors Clark and Middleton are white. Certainly, they lack standing to assert discrimination against black physicians in the absence of any direct injury to themselves. *Warth v. Seldin, supra.* They are members of the Mississippi State Medical Association and do not assert any desire to resign; even the requirement of member-

1160–61; Comment, *The Supreme Court, 1974 Term,* 89 Harv.L.Rev. 47, 219–25 (1975). Blacks do not have an "unquestioned constitutional right" to appointment on the Board of Health. *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. at 1001, 43 L.Ed.2d at 225. Governor Finch is not obligated to appoint blacks to the Board; he simply must not discriminate on the basis of impermissible criteria. *Cf. Carter, supra,* 396 U.S. at 338, 90 S.Ct. at 528, 24 L.Ed.2d at 562.

9. We note that although § 41–3–59, note 2, *supra,* is cited by plaintiffs, they do not allege that Governor Finch is in jeopardy of a prosecution under this statute because he has appointed Drs. Clark, Middleton, and Mason in violation of § 41–3–1. Since the plaintiffs do not even allege that such a prosecution is possible, we will not speculate on whether such a prosecution might be a sufficient injury to warrant the use of federal jurisdiction on behalf of the Governor. *Compare Athanson v. Grasso, supra,* 411 F.Supp. at 1159 n.9.

10. In order to consider the more serious issues, we set to one side the interesting fact that the Governor apparently did not find the conflict paralyzing when on May 7, 1976 he signed Mississippi Laws 1976, Chapter 440, Section 4. Mississippi Code Ann. § 47–5–12 (1978 Supp.). This statute provides for the appointment of members to the newly created State Board of Corrections. It provides that one member of the Board is to be an attorney who shall be appointed by the Governor from a list submitted by the Mississippi Bar Association, and that one member shall be a practicing physician, whom the Governor is to select from a list submitted by the Mississippi Medical Association.

The Governor also allowed revision of Section 41–3–1 to become effective without his signature, but also without his veto. In this

instance, veto would not have eliminated the contested method of appointment, which was also provided for in the prior statute.

11. Rule 17(b) Federal Rules of Civil Procedure provides, in pertinent part:

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile.

In the case of a public official, such as a governor, it is clear that capacity to sue is determined by the law of the state. *Baxley v. Rutland, supra,* 409 F.Supp. at 1256; 3A Moore's Federal Practice ¶ 17.19 at 17–199 (2d ed. 1978).

The duties and powers of the Governor of Mississippi are granted by the Constitution and laws of the state. Among the duties and powers:

He may bring any proper suit affecting the general public interests, in his own name for the State of Mississippi, if after first requesting the proper officer to do so, the said officer shall refuse or neglect to do the same. Miss.Code Ann. § 7–1–5(n). The Attorney General is the "proper officer" to bring suits affecting the general public interest for the state. Miss.Code Ann. § 7–5–1. Governor Finch did not request the Attorney General to bring this suit; nor did he seek the written approval of the Attorney General before bringing suit against "another arm or agency" of the state government. *See also Temple. v. State ex rel. Russell,* 1920, 123 Miss. 741, 86 So. 580. Governor Finch does not dispute that he failed to request the Attorney General to bring suit. His position is that he was not required to do so because of unusual circumstances in the suit. Because the Governor lacks standing in any event, we need not decide whether his failure would also have prevented his prosecution of the suit.

ship in that association as a prerequisite to nomination does not create any injury to them. Drs. Clark and Middleton concede in their brief they have no federal claim; they assert that they join merely as pendant parties to the state law claims. This does not suffice to give them standing here. *See Aldinger v. Howard,* 1976, 427 U.S. 1, 14–16, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276, 286–87.

## DR. HOWELL

■ Dr. Howell is also a white doctor. He is a member of the American Medical Association, but does not belong to either of the state medical associations. He asserts that the prerequisite of membership in a state professional association is invalid as a restriction on his first amendment rights as well as a denial of equal protection rights under the fifth and fourteenth amendments. However, he asserts a claim as an individual, and in this respect, like Ms. Ginn, he has made no allegations that would give him standing.

It may be that, as a class, doctors who are not members of the State Medical Association have standing to assert the claim that the provision limiting nominations to its members is unconstitutional in the absence of a showing that there is at least a rational relationship between membership and qualification to serve on the Board. *See e. g., Williamson v. Lee Optical,* 1955, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; *Semler v. Oregon State Board of Dental Examiners,* 1935, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. Conceivably, even if the statutory designation of a medical association to make nominations is valid, the restriction that it must choose only from among its members, rather than from among all licensed physicians, might be unconstitutional. *But see Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 1973, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659. However, no such class claim is asserted.

### III. THE STATE LAW ISSUES

Having found that one of the classes and one of the individuals may properly assert the invalidity of the state statute, we consider the propriety of the summary judgment dismissing their claims. We again note that these include claims that the statute is unconstitutional under Mississippi law and also that it requires construction; if valid under Mississippi law and construed to designate the Mississippi State Medical Association as the doorkeeper to nomination, it violates the federal constitution.

■ Within a relatively short time after the power and the duty of federal courts to declare federal statutes unconstitutional was established in *Marbury v. Madison,* 1803, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60, and to rule on the invalidity of state statutes was elucidated in *McCulloch v. Maryland,* 1819, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579, the federal courts recognized a corollary obligation, to avoid constitutional confrontation whenever possible. *E. g., Ex parte Randolph,* C.C.D.Va.1833, 20 Fed.Cas. No. 11,558, p. 242. As applied to questions of interpretation of state law, this doctrine requires us to resolve federal constitutional claims only when a case cannot be decided on any other basis. The power of judicial review should be employed by the least democratic branch of the government only when decision inescapably requires it; moreover, in our federal system, courts should demonstrate

> "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary. See *Cavanaugh v. Looney,* [1919,] 248 U.S. 453, 457, 39 S.Ct. 142, 143, 63 L.Ed. 354; *Di Giovanni v. Camden [Fire] Ins. Ass'n,* [1935,] 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers.

*Railroad Commission v. Pullman Co.,* 1941, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971, 975. And federal courts have, therefore, frequently abstained from deciding complex issues of state law that could more appropriately be considered by state courts

when the resolution of unclear state law issues is preliminary or essential to consideration of a federal constitutional question.[12]

Of course, "[w]here a case involves a nonconstitutional federal issue, however, the necessity for deciding which depends upon the decision on an underlying issue of state law, the practice in federal courts has been, when necessary, to decide both issues." *Propper v. Clark,* 1949, 337 U.S. 472, 490, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480, 1495. However that policy is not invariable. In diversity cases where jurisdiction is invoked because of the domicile of the parties but the issues may involve questions both of federal and state law, it can be argued that the federal court should determine all state law issues "since a major purpose of the jurisdictional grant is to provide a neutral forum for the determination of state law issues both hard and easy, [and] this purpose would be undermined by abstention whether or not the state law issue is preliminary to a federal question." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and The Federal System 989 (2d ed. 1973). The Supreme Court has, however, approved abstention even in diversity cases involving federal questions. *See, e. g., United Gas Pipe Line Co. v. Ideal Cement Co.,* 1962, 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623; *Clay v. Sun Insurance Office, Ltd.,* 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; *Burford v. Sun Oil Co.,* 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424.

Related to abstention from deciding a state law issue and either postponing or dismissing the federal case so that it can be resolved in a new action in state court is the practice of delaying action in the federal court until a state court has acted in a pending case. In *Will v. Calvert Fire Insurance Co.,* 1978, —— U.S. ——, 98 S.Ct. 2552, 57 L.Ed.2d 504, a federal district judge deferred hearing a claim in which the federal court had exclusive jurisdiction on the ground that a state court was considering the same issue and federal litigation of it would be duplicative. The Court held that mandamus should not issue to compel the federal judge to decide, saying:

> "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."

*Id.* at ——, 98 S.Ct. at 2558, 57 L.Ed.2d at 512, quoting *Brillhart v. Excess Insurance Co.,* 1942, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625. This should be compared with the not wholly dissimilar procedure whereby a federal appellate court, confronted with a state law issue, may certify the question for decision by the highest state appellate court.[13] *See, e. g., Bellotti v. Baird,* 1976, 428 U.S. 132, 150–51, 96 S.Ct. 2857, 2867–68, 49 L.Ed.2d 844, 857–58; *Lehman Brothers v. Schein,* 1974, 416 U.S. 386, 389–91, 94 S.Ct. 1741, 1743–4, 40 L.Ed.2d 215, 219–20; *Florida ex rel. Shevin v. Exxon Corp.,* 5 Cir. 1976, 526 F.2d 266, 274–75, *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92. *See generally* Field, *The Abstention Doctrine Today,* 125 U.Pa.L. Rev. 590, 605–09 (1977).

Taken together these doctrines suggest restraint in federal decision of complex and unclear state law issues. *See also Gibson v. Jackson,* 5 Cir. 1978, 578 F.2d 1045,

---

12. *E. g., Lake Carriers' Ass'n v. MacMullan,* 1972, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257; *Askew v. Hargrave,* 1971, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196; *United Gas Pipe Line Co. v. Ideal Cement Co.,* 1962, 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623; *City of Meridian v. Southern Bell Tel. & Tel. Co.,* 1959, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 652; *Albertson v. Millard,* 1953, 345 U.S. 242, 73 S.Ct. 600,

97 L.Ed. 983; *Spector Motor Serv., Inc. v. McLaughlin,* 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101. *See generally Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1250–64 (1977).

13. This procedure is apparently not available in Mississippi. *See* 1A Moore's Federal Practice ¶ 0.203[5] (2d ed. 1978).

and *Galtieri v. Wainwright,* 5 Cir., 1978, 582 F.2d 348 (habeas corpus). In this case, many of the issues raised turn on the validity of the statute under Mississippi law, and, if sustained, its interpretation guided by the principles that would be applied by Mississippi courts. The Mississippi courts have not had occasion to rule upon the propriety of nomination processes similar to those set forth in section 41–3–1. The entire statutory scheme may be invalid because it violates the Mississippi State Constitution by unlawfully delegating legislative power or by requiring membership in a particular organization or by its lack of standards to guide the group that makes nominations. Even if it is sustained as constitutional, the term "State Medical Association" must be interpreted. These issues are most appropriately resolved by a Mississippi court.

We need not consider whether the presence of these issues would cause us to suspend this case were lengthy delay necessary. *Compare Harman v. Forssenius,* 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50, 56–7; *Edwards v. Sammons,* 5 Cir. 1971, 437 F.2d 1240, 1244. One month after this suit was filed, the State of Mississippi, by an action *quo warranto,* challenged the authority of Drs. Clark, Mason and Middleton to sit on the Board of Health pursuant to the governor's appointment basing the challenge on the terms of section 41–3–1. In defense to that action, at least those plaintiffs in this case who were defendants in the state court proceeding might have obtained a decision on the state law issues. Instead they themselves sought a stay. That stay was granted in June, 1977 to continue until the federal district court decided the motion to dismiss in this case. Thereafter both the unconstitutionality and the ambiguity of the Mississippi statute were asserted by some of the present plaintiffs in a pleading entitled "Motion to Dismiss, Answer and Defenses" filed on July 11, 1977. The federal court dismissed this action on May 2, 1978. The plaintiffs have never since sought a resolution of the state law issues in the state court.

■■■ Thus, the state law issues crucial to decision of this case are now actually pending in a state court. It would be "uneconomical and vexatious" for us to attempt in this declaratory judgment and injunction case to resolve these selfsame questions. To the extent that the decision in this case turns on them, we order the plaintiff-appellants to present the state law issues to the state court as rapidly as possible and to submit a certified copy of any decree and supporting opinion or reasons for decision to us as soon as it is rendered. Should the issues not be resolved within ninety (90) days from the date of mailing of this decision to counsel, appellant shall certify that fact to us, and supply us with a memorandum stating its position with respect to the procedure to be followed. The appellees will be given fifteen (15) days within which to respond, and we will then determine the course to pursue.

## IV. MISSISSIPPI STATE MEDICAL ASSOCIATION—STATE ACTION AND APPROPRIATENESS AS DEFENDANT

■■■ At this stage we must assume that the statute will pass muster in state court; if so, then it requires persons who fulfill a state governmental function by serving on its Board of Health [14] to be nominated by an otherwise private group. A person or a professional society given the authority by state law to make the sole nominations for a state agency is, at least in performing the selection process, performing a state function. *Hawkins v. North Carolina Dental Society,* 4 Cir. 1966, 355 F.2d 718. As *Hawkins* pointed out, the situation is analogous to that created when the Jaybird Democratic Association in Fort Bend County, Texas held pre-primaries for the selection of nominees to state office. These primaries were found to be subject to

---

14. The statutory duties of the State Board of Health are enumerated in Miss.Code Ann. § 41–3–15, note 2, *supra.*

state action limitations in *Terry v. Adams,* 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152. The statutory nominating procedure for the Board of Health is "entwined with governmental policies" and subject to constitutional limitations. *See Gilmore v. City of Montgomery,* 1974, 417 U.S. 556, 565, 94 S.Ct. 2416, 2422, 41 L.Ed.2d 304, 315, quoting *Evans v. Newton,* 1966, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373, 377.

If the plaintiffs establish one or more of their claims, relief may properly be accorded by an injunction against the Medical Association. If, for example, the statute is held constitutional, and it is shown that the Association has been guilty of racial discrimination in its actions under it, an injunction may properly issue. If it is established that the statute is unconstitutional, the Association may be enjoined from submitting any further nominations. Thus the Association is properly a defendant, for under 42 U.S.C. § 1983 suit may properly be brought and relief accorded against "every person" who under color of state law "subjects, or causes to be subjected, any citizen . . . to [constitutional] deprivation."

## V. STATE NOTIFICATION

If the constitutionality of any state statute "affecting the public interest" is called into question in a federal suit, 28 U.S.C. § 2403(b) requires the court to certify that fact to the attorney general of the state in question. *See also* F.R.A.P. 44; F.R.C.P. 24(c). The state may intervene, with all the rights and liabilities of a party.

No such notice was given here; but it is evident that the Attorney General of Mississippi had actual notice for he has appeared representing some of the parties, the members of the State Board of Dental Examiners. Should he desire to intervene on behalf of the State as such, he will be given leave to do so. *See Wallach v. Lieberman,* 2 Cir. 1966, 366 F.2d 254; *Thatcher v. Ten-*

*nessee Gas Transmission Co.,* 5 Cir. 1950, 180 F.2d 644, 648 n.7, *cert. denied,* 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609.

## VI. EQUAL PROTECTION

▇ In addition to Dr. Howell's charge that the requirement of membership in a medical association denies a licensed doctor who is not a member equal protection of the laws in violation of the fourteenth amendment, Ms. Ginn asserted that the requirement that persons who serve on the Board of Health be qualified as a doctor, dentist, pharmacist, optometrist or nurse denies anyone who is not a member of one of these professions freedom of association and equal protection of the laws. Their lack of standing prevents the litigation of this claim. The plaintiffs who have standing do not appear to be in a position to assert it, for they have the requisite professional capacity and can assert no injury as a result of it.

Moreover, we note that the argument proceeds on the premise that, like a jury, a State Board of Health should be open to all citizens. However, a position on a governmental body charged with technical duties is not like service in an elective public office or on a jury for which any citizen in the body politic ought generally to be eligible.

The constitutional guarantee of equal protection of the laws requires only that, in determining eligibility for appointive public office, there be a rational relationship between the functions of the office and the criteria imposed. *See Sailors v. Board of Education,* 1967, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650.

## VII. THE OTHER DEFENDANTS

▇ Plaintiffs have sought to join all the defendants other than the Medical Association pursuant to Rule 19(a) of the Federal Rules of Civil Procedure [15] because they

---

**15.** F.R.C.P. 19(a) provides, in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action

if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a

have "an interest relating to the subject of the action." There is no allegation that any of the plaintiffs are professionally qualified for membership in the various other professional associations joined as defendants. There is no allegation that any of these associations have discriminated against black people. However, it is evident that each of these associations has an interest in the outcome of this action. If the statute is declared unconstitutional for any reason, they lose their franchise to nominate candidates for appointment to the Board of Health.

Even though these groups clearly have an interest in the action, it does not follow that the plaintiffs may join them as defendants. Rule 19 does not confer federal jurisdiction over a party. F.R.C.P. 82. *Aldinger v. Howard, supra,* clearly holds that there is no federal jurisdiction over pendent *parties* in a § 1983 suit, only pendent *claims.* The Supreme Court affirmed the dismissal of parties who were in the suit only because of state law claims against them. Aside from the Medical Association, it is clear that the plaintiffs who have standing in this lawsuit have no independent basis of federal jurisdiction over the defendants.

Although dismissing the defendants other than the Medical Association was proper, as we have noted, these defendants do have an interest relating to the subject of the action. Although we doubt that they will choose to do so, if any of the defendants wish to protect its interest in this lawsuit, it should be granted leave to intervene under F.R.C.P. 24. *E. g., New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York,* 2 Cir. 1975, 516 F.2d 350 (intervention allowed under F.R.C.P. 24(a)(2) by pharmacists claiming an interest in suit by consumers attacking regulations promulgated by the defendant).

## VIII. RECAPITULATION

We have, of course, carefully considered whether the action should be dismissed

pending resolution of the state law issues. *See, e. g. Trainor v. Hernandez,* 1977, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486; *Alabama Public Service Commission v. Southern Ry.,* 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002; *Burford v. Sun Oil Co.,* 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Field, *Abstention in Constitutional Cases: The Scope of the* Pullman *Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1153–63 (1974). However, this suit has now been pending since March, 1977. To dismiss it with issues unresolved would merely leave the potential problem festering; we now have the benefit of the trial court's opinion with respect to most of the issues that may be raised. The delay and expense consequent to dismissal and possible later relitigation appear to be unjustifiable.

 There is clear authority for district courts merely to defer judgment on the federal law claims pending resolution of state law issues. *E. g., Zwickler v. Koota,* 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; *England v. Louisiana State Board of Mental Examiners,* 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. Although we know of no case in which an appellate court has similarly paused, we see no reason in principle why we should not do so.

The action of the trial judge in dismissing the claims of the following plaintiffs is affirmed: Governor Finch; Ms. Ginn, individually, and as a class representative; Drs. Clark, Middleton, and Howell. As to the other plaintiffs, because the resolution of the state law issues might render moot those claims not yet dismissed, we withhold judgment. The action of the trial judge in dismissing all the defendants other than the Mississippi State Medical Association, Inc. is affirmed.

Because the plaintiffs (as defendants in the state quo warranto proceeding) seek, in part, declarations as to the unconstitutionality, invalidity and ambiguity of the Mississippi statute when tested by Mississippi

practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substan-

tial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

law, we order both parties to attempt to have the state court proceed with the now unstayed action and, within 30 days after its resolution, to file a certified copy of any decree and opinion, the plaintiffs are to accompany this by a memorandum of their position stating the issues remaining and the appropriate method of their disposition, including possible remand to the trial court. The defendants are given fifteen (15) days thereafter to respond.

If within ninety (90) days from the mailing of this opinion no action has been taken by the state court, the plaintiffs shall file a certificate to that effect, together with a memorandum covering the matters specifically mentioned in the preceding paragraph. The defendants are given fifteen (15) days to respond.

If the plaintiffs do not within that period of time diligently pursue determination of the state issues in state court, the defendants may file a motion to dismiss this appeal, accompanied by a memorandum concerning their position. The plaintiffs will be given fifteen (15) days to respond.

Jurisdiction of this matter is retained pending the further proceedings required by this opinion.