IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2008

Charles R. Fulbruge III
Clerk

No. 07-30482

JAMES J. DONELON,
COMMISSIONER OF INSURANCE
FOR THE STATE OF LOUISIANA

Plaintiff-Appellant,

v.

LOUISIANA DIVISION OF ADMINISTRATIVE LAW
THROUGH ITS DIRECTOR, ANN WISE

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EDITH H. JONES, Chief Judge:

James J. Donelon, Commissioner of Insurance for the State of Louisiana, challenges the district court's dismissal of his declaratory judgment action attacking the constitutionality of LA. REV. STAT. ANN. § 49:992(B)(2). He argued that under 18 U.S.C. § 1033, he is the sole authority in Louisiana who may regulate which individuals may engage in the insurance business. Section 49:992(B)(2), he contends, is unconstitutional because it allows judges in the Louisiana Division of Administrative law to overturn his decisions and, therefore, violates both the Commerce and Supremacy Clauses. The district

court dismissed the case on grounds of Eleventh Amendment sovereign immunity. Because we conclude that Donelon lacks standing to bring this cause of action, we affirm.

BACKGROUND

Congress enacted 18 U.S.C. § 1033 as part of the "Violent Crime Control and Law Enforcement Act of 1994" ("the Act") which included criminal and civil enforcement provisions aimed at white-collar and insurance fraud. Engaging in the insurance business with a prior felony conviction, making false material statements, and embezzlement are among insurance-related crimes defined by the statute. Id. Section 1033(e)(2) allows a person who has been convicted of any offense enumerated in the statute, as well as "any criminal felony involving dishonesty or a breach of trust,"[1] to engage in the insurance business only if the person has the written consent of "any insurance regulatory official authorized to regulate the insurer." This is the only portion of § 1033 that discusses state regulatory authorities. The statute does not give states or state insurance officials any specific guidance as to how the waivers are to be granted or denied, nor does it define "insurance regulatory official." Because states are the primary regulators of the insurance industry,[2] enforcing the statute is their responsibility.

Appellant Donelon is Louisiana's Commissioner of Insurance. His office and the Louisiana Department of Insurance ("DOI") are creations of the 1974 Louisiana Constitution. See LA. CONST. art. IV, §11. An enabling statute directs the commissioner to administer the state insurance code. See LA. REV. STAT. ANN. § 22:2(A)(1) (2007). Pursuant to the code, an applicant for licensure must

---

[1] See 18 U.S.C. § 1033(e)(1)(A).

[2] THE MCCARRAN-FERGUSON ACT, 15 U.S.C. § 1101, et seq. reserves insurance regulation to the states.

have "the written consent of the commissioner pursuant to 18 U.S.C. § 1033" in order to obtain a license. LA. REV. STAT. ANN. § 22:1136(A)(7) (2007).

In 1996, the Louisiana legislature created the Division of Administrative Law ("DAL"). The DAL has the authority to review administrative decisions of other departments[3] and serves as the final, neutral arbiter of claims of citizens aggrieved by administrative orders of executive agencies, including the DOI.[4] DAL decisions are effectively unappealable. See LA. REV. STAT. ANN. § 49:992(B)(2) ("Upon the issuance of such a final decision or order, the agency or any official thereof shall comply fully with the final order or decision of the [ALJ]."). Donelon believes this process violates the federal Constitution and laws, usurping his authority as commissioner.

The Louisiana Supreme Court rejected a contention that the DAL violated the Louisiana constitution. See Wooley, 893 So.2d at 762. Donelon then filed suit in November 2006, seeking a declaration that LA. REV. STAT. ANN. § 49:992(B)(2) is unconstitutional and conflicts with § 1033. The district court dismissed the action for lack of subject-matter jurisdiction, concluding that the DAL, as an arm of the state, had sovereign immunity from suit and that none of the exceptions to sovereign immunity applied. Donelon timely appealed.

## DISCUSSION

We review de novo a district court's dismissal for lack of subject-matter jurisdiction. Meyers ex rel. Benzing v. Texas, 410 F.3d 236 (5th Cir. 2005); United States v. Tex. Tech Univ., 171 F.3d 279, 288 (5th Cir. 1999). Although the parties' briefing in this court addressed only the issue of sovereign immunity, we

---

[3] In creating the DAL, "the legislature decided to transfer [the administrative law judges] previously employed by the various agencies to a central division to remove the [ALJs] from the direct influence of the agency heads and to give them a measure of independence." Wooley v. State Farm Fire & Cas. Ins. Co., 893 So. 2d 746, 767 (La. 2005).

[4] The legislature specifically excluded some agencies from the DAL's reach; the DOI was not one of them. See LA. REV. STAT. ANN. § 49:992(D)(1–8).

are obliged also to consider threshold questions of justiciability such as standing. Because Donelon's alleged lack of standing was a legal issue briefed to the district court, we are not proceeding sua sponte when we consider it.

In order to have standing to sue in a federal court, a plaintiff must bring a "case or controversy." U.S. CONST. art. III. This requires more than an abstract legal dispute. Allen v. Wright, 468 U.S. 737, 754 (1984). "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" Raines v. Byrd, 521 U.S. 811, 818–19 (1997) (quoting Wright, 468 U.S. at 751). Put another way, the plaintiff must establish a "personal stake" in the dispute and that the injury is particularized to him. Id. at 819; see also Baker v. Carr, 369 U.S. 186, 204 (1962). The injury cannot be one suffered by the citizens at large. Finch v. Miss. St. Med. Ass'n, 585 F.2d 765, 771 (5th Cir. 1978).

The Supreme Court has held that state officials lack standing to challenge the constitutional validity of a state statute when they are not adversely affected by the statute, and their interest in the litigation is official, rather than personal. See County Court of Braxton County v. West Virginia ex rel. Dillon, 208 U.S. 192, 197 (1908). In another context, the Supreme Court made it clear that courts should not pass upon the constitutionality of a statute "upon complaint of one who fails to show that he is injured by its operation. . . . Thus, the challenge by a public official interested only in the performance of his official duty will not be entertained." Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 348 (1936).

In Finch, this court rejected the claimed standing of the Governor of Mississippi to challenge a state law whose enforcement, he believed, would cause him to violate his oath to uphold the Constitution. See Finch, 585 F.2d at 773. The court observed:

4

The mental disposition of the Governor is all that gives him cause to complain; were he to change his mind tomorrow and decide, rightly or wrongly, that the state statute is valid, he would no longer have any interest in the case. He has no personal stake in the outcome of this case; he will not be affected favorably by a decision that the statute is unconstitutional nor adversely by a decision that it is valid.

Id. at 774.[5]

Shortly after Finch, this court took the anomalous, if not unique, position that a political subdivision might have standing to challenge state laws that allegedly violate the Supremacy Clause.[6] See Rogers v. Brockette, 588 F.2d 1057 (5th Cir. 1979). In Brockette, a local school district sued Texas state educational authorities because a Texas statute required it to participate in an otherwise voluntary federal school breakfast program. Id. at 1059. The court concluded the district had standing, in part, because it alleged that Congress made the district the proper body to decide some significant questions under the breakfast program. Id. at 1062.

---

[5] Finch recognized that the Supreme Court had previously concluded that school board officials had standing to challenge a state statute requiring school districts to purchase and loan textbooks to students in enrolled in parochial schools. See Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen, 392 U.S. 236, 241 n.5 (1968). But Finch explained that later standing decisions limited Allen and that Allen was factually distinct. Finch, 585 F.2d 773–74; see also 13A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 3531.11 (stating that federal circuit courts have recognized that Allen's holding has been undermined by the Court's more recent standing decisions).

[6] The opinion laboriously, and not very convincingly distinguished the long line of cases holding that a political subdivision did not have standing to sue the parent state that created it. See Brockette, 588 F.2d at 1067–68; cf. Town of Ball v. Rapides Parish Policy Jury, 746 F.2d 1049, 1051 n.1 (5th Cir. 1984) (noting general rule that political subdivisions have no standing to invoke the Contract Clause or the Fourteenth Amendment in opposition to the will of their creator, and citing long line of cases illustrating the rule). Although some circuits have followed a per se rule that political subdivisions may not sue their parent states under any constitutional provision, that is not the rule in this circuit. See Brian P. Keenan, Note, Subdivisions, Standing, and the Supremacy Clause: Can a Political Subdivision Sue Its Parent State Under Federal Law?, 103 MICH. L. REV. 1899, 1902 (2005).

But for an important distinction made by that court, Brockette bears some similarity to the case here. The court distinguished, for purposes of standing, between political subdivisions and state agencies. The court stated:

> Some state agencies may well be so closely identified with the state government, and so thoroughly controlled by the body they are suing that the litigation amounts to a suit by the state against itself; such a suit lacks the live adversariness we must find before we can entertain a case.

Id. at 1065. Thus, when a state is essentially suing itself, there is no "case or controversy." Id. The court concluded that political subdivisions like the school district were sufficiently independent of the state "to ensure that suit between them [would] be a genuinely adversary contest." Id.

Similarly, the Seventh Circuit holds that a suit involving a state official challenging the constitutional validity of another state actor's decisions under state law is "clearly outside the cognizance of the federal courts." Cronson v. Clark, 810 F.2d 662, 664 (7th Cir. 1987). The court went on to state that the typical subjects of injury — deprivation of liberty and property — "do not encompass the interest of a public official in being allowed to act to the full extent of what he conceives to be his powers under state law. The federal courts do not sit to resolve intramural disputes among state officials over the bounds of their authority under state law." Id. at 665.

Here, Donelon has no "personal stake" in this litigation. Rather, he seeks to exercise what he believes are the full extent of his official powers under federal and state law. There is no claim that he suffers any personal injury when an ALJ overturns one of his decisions regarding 18 U.S.C. § 1033 waivers. Nor is there a claim that he will be expelled from office or lose public funding if he complies with Louisiana law.[7] As in Finch, he is merely suing to ensure

---

[7] Cf. Allen, supra, note 5.

Louisiana law conforms to his opinion of what federal law requires. And although this court held in Brockette that a political subdivision could bring a Supremacy Clause challenge to a state law in federal court, Donelon's position as the head of a state agency creates a situation where the state is essentially suing itself. The dispute between Donelon and the DAL is decidedly "intramural." Cronson, 810 F.2d at 665. Thus, there is no Article III case or controversy.

Because Donelon lacks standing to sue, the district court's dismissal for lack of federal jurisdiction is AFFIRMED.