CITY OF ALPINE, City of Pflugerville, City of Rockport, City of Wichita Falls, Diana Asgeirsson, Angie Bermudez, Jeff Browning, Jacques Du-Bose, James Fitzgerald, Jim Ginnings, Victor Gonzalez, Russell C. Jones, Mel LeBlanc, Lorne Liechty, A.J. Mathieu, Johanna Nelson, Cindy O'Bryan, Todd Pearson, Charles Whitecotton, Henry Wilson, Kevin Wilson, Plaintiffs,

v.

Greg ABBOT, Texas Attorney General, and the State of Texas, Defendants.

No. P:09–CV–059.

United States District Court, W.D. Texas, Pecos Division.

July 28, 2010.

Dick DeGuerin, DeGuerin & Dickson, Houston, TX, William M. McKamie, Bradford E. Bullock, McKamie Krueger, LLP, San Antonio, TX, Arvel Rodolphus Ponton III, Law Office of Rod Ponton, Alpine, TX, for Plaintiffs.

James C. Ho, Solicitor General of Texas, Sean D. Jordan, Thomas M. Lipovski, Marianna Mancusi–Ungaro, James "Beau" Eccles, Allison V. Eberhart, Austin, TX, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CITIES AS PLAINTIFFS

ROBERT JUNELL, District Judge.

Before the Court is the Motion of the Defendants, Greg Abbot and the State of Texas ("Defendants") to dismiss the Plaintiff cities, Alpine, Pflugerville, Rockport, and Wichita Falls ("Plaintiff Cities") from this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. No. 7). For the reasons explained below, the Motion to Dismiss is GRANTED.

### I. BACKGROUND

The Plaintiffs bring this lawsuit pursuant to 42 U.S.C. § 1983, to challenge the constitutionality of the Texas Open Meetings Act ("TOMA"), which provides criminal penalties against public officials who "participate in a closed meeting." TEX GOVT CODE § 551.144(a)(3). Plaintiffs argue that TOMA is facially over broad and is unconstitutional as applied. They seek a declaratory judgment and injunction against Defendants providing that the criminal provisions of TOMA may not be enforced, and a declaratory judgment that such provisions violate the First Amendment of the United States Constitution both on their face and as applied. *See* Amended Complaint (Doc. No. 6) at 17. Each of the Plaintiff Cities, Alpine, Pflugerville, Rockport, and Wichita Falls, by duly passed resolutions, have voted to join this lawsuit. *See* Complaint (Doc. No. 1) at Ex's. 1, 3, & 4; Amended Complaint (Doc. No. 6) at Ex. 1.

On February 2, 2010, Defendants filed their Motion to Dismiss Cities as Plaintiffs (Doc. No. 7), pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the cities lack standing to bring this suit because: (1) they are creatures of the state, and as such, cannot sue the state; (2) they have no rights under the First Amendment; and (3) they are not subject to the provisions they propose to challenge.

### II. Fed.R.Civ.P. 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss an action for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.* A Rule 12(b)(1) motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in sup-

port of its claims that would entitle it to relief. *See Home Builders Ass'n of Mississippi, Inc.*, 143 F.3d at 1010.

## III. ANALYSIS

Defendants argue that the Plaintiff Cities must be dismissed because, as creatures of the State, they have no standing to sue their creator—the State itself—for violations of the constitution. While the Court disagrees with the Defendants' overall premise that a city can *never* bring a constitutional claim against its creator, the Plaintiff Cities cannot bring their asserted claims in this case.

### A. Law

As explained by the Fifth Circuit in *Rogers v. Brockette*, 588 F.2d 1057 (5th Cir.1979), a certain line of Supreme Court cases contain language that is broad enough to support the premise "that a municipality has no standing to sue the state that created it." *Id.* at 1068 (citing *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."); *City of Trenton v. New Jersey*, 262 U.S. 182, 187, 43 S.Ct. 534, 67 L.Ed. 937 (1923) ("[A] municipality is merely a department of the state, and the state may withhold, grant or withdraw powers or privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will.")). The *Rogers* court, how-

ever, ultimately found that these cases are not an absolute bar to a lawsuit by a political subdivision against its state creator. Rather, the court found, "these cases are substantive interpretations of the constitutional provisions involved; we do not think they hold that a municipality never has standing to sue the state of which it is a creature." [1] *Id.* at 1068. The court distinguished between cases where a subdivision brings a claim based on the constitution alone, and those in which a subdivision claims that a particular state law violates the Supremacy Clause of the constitution because it is inconsistent with a law passed by Congress. *Id.* at 1070. The court held that only the later present viable claims because, "Congress may interfere with a state's internal political organization in ways that the Constitution itself does not interfere." *Id.* Ultimately, the plaintiff school district in *Rogers* was permitted to challenge a law of the State of Texas on grounds that it was inconsistent with federal school breakfast statutes and, therefore, violated the Supremacy Clause of the constitution. *Id.* at 1070–71.

■ Therefore, when a political subdivision sues its state creator on constitutional grounds, *Rogers* requires an analysis of the constitutional provisions involved in the case. If a provision is "written to protect individual rights, as opposed to collective or structural rights," it does not apply to the political subdivision and, therefore, the subdivision may not bring the claim against its own state. *Branson School Dist. RE–82 v. Romer*, 161 F.3d 619, 628 (10th Cir.1998) (citing *Rogers*, 588 F.2d at 1068). Federal courts, according-

---

1. Recently, the Fifth Circuit described this holding as an "anomalous, if not unique, position," and stated that the decision "laboriously, and not very convincingly distinguished the long line of cases holding that a political subdivision did not have standing to sue the

parent state that created it." *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 567, n. 6 (5th Cir.2008). *Rogers*, however, is still good law and will be applied in this case.

ly, have held a political subdivision may not sue its creating state claiming a violation of individual rights guaranteed by the constitution. *See e.g., Board of Levee Com'rs of the Orleans Levee Bd. v. Huls,* 852 F.2d 140, 142–43 (5th Cir.1988) (Takings clause of the Fifth Amendment); *Appling County v. Mun. Elec. Auth.,* 621 F.2d 1301 (5th Cir.1980) (Due Process Clause of the Fourteenth Amendment); *City of Moore, Oklahoma v. Atchison, Topeka, & Santa Fe Ry. Co.,* 699 F.2d 507, 511–12 (10th Cir.1983) (Equal Protection clause of the Fourteenth Amendment). However, where a suit by a political subdivision against its state creator is based on a constitutional provision that protects structural rights—such as the Supremacy Clause—the political subdivision may sue its state. *See Rogers,* 588 F.2d at 1069; *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise,* 522 F.3d 564, 567–68, n. 6 (5th Cir.2008) (dicta); *Branson School Dist. RE–82,* 161 F.3d at 629. The underlying rationale is well-summarized by *San Diego Unified Port District v. Gianturco,* 457 F.Supp. 283 (S.D.Cal.1978):

> The reason for distinguishing between constitutional challenges based on the Supremacy Clause and challenges based on other constitutional provisions lies in the purpose of the Supremacy Clause. The Supremacy Clause mandates that "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. This provision forbids state regulation which conflicts with federal law. It establishes a structure of government which defines the relative powers of states and the federal government.... Other constitutional provisions, unlike the Supremacy Clause, ... confer fundamental rights on individual citizens. The Fourteenth Amendment, for example, guarantees that all citizens enjoy equal protection of the laws and due

process of law. These are not structural limitations on government power in the Supremacy Clause sense, but they are rights given to individual citizens which limit governmental power generally. Such rights accrue to individual citizens, not to units of government. Consequently, political subdivisions have no legitimate basis for asserting constitutional rights which are intended to limit governmental action vis-a-vis individual citizens.

*Id.* at 289–90; *see also, Branson School District RE–82 v. Romer,* 958 F.Supp. 1501, 1507–08 (D.Colo.1997).

Therefore, in this case, the validity of the Plaintiff Cities' claim rest on whether they are protected by the Free Speech clause of the First Amendment. Additionally, because this is a suit against the State, and the First Amendment is incorporated against the states by the Due Process clause of the Fourteenth Amendment, the validity of the Plaintiffs' claim depends on whether they have a protected "liberty" interest in the freedom of speech that is secured by the Due Process Clause of the Fourteenth Amendment. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 489, n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) ("Although the text of the First Amendment states that 'Congress shall make no law ... abridging the freedom of speech, or of the press,' the Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment"). As explained below, neither of these constitutional rights apply to the Plaintiff Cities.

**B. The Cities have no rights against the State under the First Amendment.**

■ Applying the law of *Rogers* and its progeny, this Court finds that the Plaintiff Cities have no First Amendment freedom

of speech rights because the freedom of speech is an individual right rather than a structural right defining the relative powers of the states and the federal government. *See Thornhill v. State of Alabama,* 310 U.S. 88, 95, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) (describing the freedom of speech as one of the "fundamental personal rights and liberties which are secured to all persons"). Plaintiffs argue that "[i]n light of *Citizens United* [*v. Federal Election Com'n,* — U.S. —, 130 S.Ct. 876, 900, — L.Ed.2d — (2010)] municipal corporations should be recognized as possessing First Amendment rights that they may assert on behalf of the individuals who make up such entities." Plaintiffs' Response at 5. *Citizens United,* however, held that government may not suppress political speech of *private* corporations, not public ones. *Citizens United,* 130 S.Ct. at 913, 130 S.Ct. 876. "There has long been a distinction between private and public corporations when it comes to a state's power to regulate." *South Macomb Disposal Authority v. Washington Tp.,* 790 F.2d 500, 504 (6th Cir.1986) (citing *Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819)). While a state's power to regulate a private corporation is limited by the constitution, a public corporation is a pure creature of the state and, as such, the state may generally grant or withdraw rights, powers, and privileges from it without limit of the federal constitution. *Id., City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1254 (5th Cir.1976)("[I]t has been apparent that public entities which are political subdivisions of states do not possess constitutional rights.... Such entities are creatures of the state, and possess no rights, privileges, or immunities independent of those expressly conferred upon them by the state."). Plaintiff Cities' argument based on *Citizens United* has no merit because the case addressed the rights of private

corporations and does not apply to public corporations.

Neither party has cited a case where a city, or other political subdivision of a state, sued its creator alleging a violation of the Free Speech clause of the First Amendment. However, the Court has located a recent case from the Idaho Federal District Court that involves such a claim, *Nampa Classical Academy v. Goesling,* 714 F.Supp.2d 1079 at 1084–86, 2010 WL 1977434 at *1–2 (D.Idaho 2010). There, with little analysis, the court granted the State's motion to dismiss the Nampa Classical Academy's First Amendment free speech claim (along with other federal constitutional claims), noting that Nampa Classical Academy, as a political subdivision of the State, "has no privileges or immunities to invoke against the State." *Id.* at 1087, at *4.

Although the freedom of speech is a right that is guaranteed to entities other than individual persons, Plaintiffs have not cited a single case—and the Court is aware of none—that holds the freedom of speech applies to the political subdivision of a state, or that a political subdivision can invoke the free speech rights of its citizens against its own state. Certainly, the freedom of speech is not one of the structural rights akin to the Supremacy Clause that the Fifth Circuit recognized as a valid basis for a lawsuit by a political subdivision against its state creator in *Rogers.* 588 F.2d at 1068. Rather, the right is one of the "fundamental personal rights" guaranteed by the constitution. *Thornhill,* 310 U.S. at 95, 60 S.Ct. 736. Therefore, the present claim by the Plaintiff Cities has no legal basis.

## C. The Cities have no rights against the State under the Fourteenth Amendment.

Additionally, while abridgment of the freedom of speech by the Federal Gov-

ernment is prohibited by the First Amendment alone, such abridgment by a state government is prohibited by the First Amendment's application to the states by the "liberty" protected under the Due Process Clause of the Fourteenth Amendment. *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 780, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("Freedom of speech and the other freedoms encompassed by the First Amendment always have been viewed as fundamental components of the liberty safeguarded by the Due Process Clause"); *44 Liquormart, Inc.*, 517 U.S. at 489 n. 1, 116 S.Ct. 1495 ("Although the text of the First Amendment states that 'Congress shall make no law ... abridging the freedom of speech, or of the press,' the Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment"); *Axson–Flynn v. Johnson*, 356 F.3d 1277, 1283 n. 3 (10th Cir.2004) ("The free speech clause applies to the states through the due process clause of the Fourteenth Amendment"). Logically, therefore, the viability of a claim that the free speech right of a particular entity has been violated by a state is dependant on whether the plaintiff can demonstrate that they are protected, not only by the First Amendment, but also, by the guarantee of liberty secured in the Due Process clause of the Fourteenth Amendment. *See Bellotti*, 435 U.S. at 778–84, 98 S.Ct. 1407 (finding that a private corporation's free speech right is protected against state action by the "liberty" interests secured under the Due Process clause of the Fourteenth Amendment, thereby recognizing that the viability of a free speech violation claim against a state hinges on whether the claimant has "liberty" interests guaranteed by the Due Process clause of the Fourteenth Amendment).

Unfortunately for the Plaintiff Cities, courts have consistently held that political subdivisions of a state, such as cities, are not protected by the Due Process Clause of the Fourteenth Amendment against its creating state. *City of Newark v. New Jersey*, 262 U.S. 192, 196, 43 S.Ct. 539, 67 L.Ed. 943 (1923) ("The city cannot invoke the protection of the Fourteenth Amendment against the state"); *Coleman v. Miller*, 307 U.S. 433, 441, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) ("Being but creatures of the State, municipal corporations have no standing to invoke ... the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator"); *Branson School Dist. RE–82*, 161 F.3d at 628 ("It is well-settled that a political subdivision may not bring a federal suit against its parent state based on rights secured through the Fourteenth Amendment"); *Delta Special School Dist. v. State Board of Education*, 745 F.2d 532, 533 (8th Cir.1984) ("A political subdivision of the state cannot invoke the protection of the fourteenth amendment against the state."); *South Macomb Disposal Authority v. Washington Tp.*, 790 F.2d 500, 505 (6th Cir.1986) ("a municipal corporation, in its own right, receives no protection from the Equal Protection or Due Process Clauses [of the Fourteenth Amendment] vis-a-vis its creating state").

Therefore, in addition to having no rights under the First Amendment, the cities have no protected "liberty" interests under the Due Process clause of the Fourteenth Amendment. Because the First Amendment applies, to the states through the Fourteenth Amendment, the Plaintiff Cities' lack of a liberty interest under the Fourteenth Amendment is fatal to their claim.

## IV. CONCLUSION

Because the Plaintiff Cities have no interest in the rights that they have invoked against the Defendants, this Court lacks subject matter jurisdiction over the Plain-

tiff Cities' claim, and there are no set of facts in support of their claim that would entitle them to relief. This Court must GRANT the Defendants' Motion to Dismiss Cities as Plaintiffs (Doc. No. 7).

It is THEREFORE ORDERED that Defendants' Motion to Dismiss Cities as Plaintiffs (Doc. No. 7) is **GRANTED.**